VAN ARNEM COMPANY, a Michigan corporation, and Van Arnem Financial Services, Inc., a Michigan corporation, Plaintiffs,

v.

MANUFACTURERS HANOVER LEASING CORPORATION, a New York Corporation, Defendant.

Civ. No. 86–75397.

United States District Court, E.D. Michigan, S.D.

Nov. 6, 1991.

Delmer C. Gowing, III, May, Simpson & Strote, P.C., Bloomfield Hills, Mich., for plaintiffs.

Gary W. Faria, Miller, Canfield, Paddock and Stone, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court on Defendant's motion for Summary Judgment which, for the reasons outlined below is granted.

Plaintiffs in this breach of contract diversity action were associated leasing companies which leased heavy equipment to lessee customers and sold tax sheltered interests in those leases to investors who obtained such tax advantages from their investments as credits and depreciation on the equipment leased. In order to purchase this equipment, in September of 1980 Plaintiffs entered a $15 million umbrella contract with Defendant, a commercial lender which would be protected by a first-position secured interest in the equipment purchased, and by assignment was to receive direct from Plaintiffs' lessees all rent-

al payments, which were to be equal to the principal and interest which Plaintiffs owed Defendant. The umbrella contract fixed the interest rate at 12.75% for a nine month term expiring on June 30, 1981. The period was one of nationally rising interest rates. In exchange for the fixed interest rate, Plaintiffs paid Defendant $75,000, of which $50,000 was later refunded as an award for submitting fundable proposals. The contract provided, at page I, as follows:

> Financing under this commitment must occur on or before June 30, 1981. MHLC shall have no obligation to finance any equipment to lessees/borrowers after that date.

On February 11, 1981, Plaintiffs and Defendant entered into a "Loan and Security Agreement" as contemplated by the umbrella contract, setting forth additional general conditions for transactions acceptable to Defendant for financing. Specifically, Section 1.2 required:

> The obligation of Lender to make each loan contemplated hereby shall be subject to the fulfillment to the satisfaction of Lender on or before the Closing Date of the following conditions precedent: ... (k) The Related Lease and all ancillary documentation shall be satisfactory in form and substance to lender....

The umbrella contract and loan agreement required, in essence, that Plaintiffs submit to Defendant completely documented proposals for financing each individual equipment purchase and lease, and required Defendant to issue a separate commitment letter indicating its approval and funding of each approved proposal.

The Loan and Security agreement provided specifically, in its Section 1.2, as follows:

> The obligation of Lender to make each loan contemplated hereby shall be *subject to the fulfillment* to the satisfaction of Lender *on or before the Closing Date of the following conditions precedent:*
>
> \* \* \* \* \* \*
>
> (b) Lender shall have received from Messrs. Fitzgerald, Young, Peters, Dak-

mak & Bruno, Counsel for the Borrower, their opinion....

\* \* \* \* \* \*

> (k) The related *lease and all ancillary documentation* shall be satisfactory in form and in substance to Lender ...

There is no dispute as to what documentation was required. Defendant did issue eight commitment letters under this arrangement, for a total of over $7 million. In June of 1981, however, as the expiration of the 12.75% fixed interest rate term approached, five other proposals failed to be funded.

On December 31, 1986, Plaintiffs filed this lawsuit, alleging Defendant's breach of its contract to fund the five disputed transactions and its breach of an implied covenant of good faith and fair dealings applicable to the contractual relationship. On May 15, 1989, this court granted Defendant's motion for summary judgment and dismissed the lawsuit.

Plaintiffs appealed from this court's judgment and the U.S. Court of Appeals for the Sixth Circuit, by a memorandum opinion of May 1, 1990, affirmed this court's summary judgment on Plaintiffs breach of contract claim. However, it remanded the case because of this court's failure to resolve the question of whether Michigan or New York law applied and, if governing law so requires, to resolve Plaintiffs remaining claim of breach of an implied covenant of good faith. 902 F.2d 36.

This memorandum constitutes this court's ruling on Defendant's renewed motion for summary judgment, made after remand and concerning only the remaining issue of the implied covenant.

 A Michigan federal court sitting in diversity jurisdiction must apply the choice of law rules of the forum state, and Michigan authority requires that contracts be governed by the law of the state in which they are executed. In this case, inasmuch as Defendant's offer was undisputedly sent from its Michigan office to Plaintiffs' Michigan representatives, who accepted it in Michigan, the court finds that Michigan law governs; and that an implied

covenant of good faith must be applied. *Ferrell v. Vic Tanny International, Inc.*, 137 Mich.App. 238, 243, 357 N.W.2d 669 (1984); *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041–1042 (6th Cir.1990) (applying Michigan law); *Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873, 876–878 (5th Cir.1989) (applying Michigan law); *Wells v. 10X Mfg. Co.*, 609 F.2d 248 (6th Cir.1979).

■ It should be noted, moreover, that even if New York law were applicable, this circuit has held when applying New York law that an implied covenant of good faith governs the contractual relationship. *KMC v. Irving Trust*, 757 F.2d 752 (6th Cir.1985).

Accordingly, the court must examine Plaintiffs' response to Defendant's well-supported motion for summary judgment pursuant to Rule 56 of the Federal Rules of Procedure in accordance with the requirement of Rule 56(e) that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's response, by affidavits or as otherwise provided in this rule, but must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment if appropriate, shall be entered against the adverse party.

In this action, Plaintiffs bear the burden of proving that the five transactions in dispute were not funded because of Defendant's breach of the implied covenant of good faith. *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 758 (6th Cir.1985). Defendant's burden, on motion for summary judgment, is to demonstrate the absence of any evidence in the record which could create a genuine issue of fact which is material under the applicable law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Potters Medical Center v. City Hospital Assn.*, 800 F.2d 568 (6th Cir.1986). Defendant has met that burden, and the court finds that there is no dispute as to any material fact of record in this case. Defendant is therefore entitled as a matter of law and to judgment, on the undisputed facts, on Plaintiffs' claim of breach of the implied covenant of good faith.

■ The implied covenant of good faith under Michigan law, as well as under the law of other jurisdictions having persuasive effect, neither overrides nor replaces any express contractual term. *Hubbard Chevrolet, supra; General Aviation, supra; Cardinal Stone Co., Inc. v. Rival Mfg. Co.*, 669 F.2d 395; 32 U.C.C. Rep. Serv. 1313 (6th Cir.1982); *Kham & Nate's Shoes v. First Bank of Whiting*, 908 F.2d 1351 (7th Cir.1990); *Price v. Wells Fargo Bank*, 261 Cal.Rptr. 735, 740, 213 Cal. App.3d 465 (1989). It does not provide the basis for a cause of action independent of a valid existing contract. *Quail Ridge Associates v. Chemical Bank*, 558 N.Y.S.2d 655, 657, 162 A.D.2d 917; (3 Dept.1990), appeal dismissed 76 N.Y.2d 936, 563 N.Y.S.2d 64, 564 N.E.2d 674 (1990). Nor does it require a party to ignore, forego or waive its express contractual rights. *Gilmore v. Ute City Mortgage Company*, 660 F.Supp. 437 (D.Colo.1986); *Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824, 73 N.Y.2d 1, 537 N.Y.S.2d 787 (1988). Where a contract contains an express expiration date, the implied covenant of good faith does not require a party to waive or extend that expiration date, or to perform after that date. *Penthouse International Ltd. v. Dominion Federal Savings and Loan Ass'n.*, 855 F.2d 963 (2d Cir.1988).

■ A lender which enters a contract for a line of credit with a borrower does not thereby become the borrower's fiduciary. The lender remains entitled to advance its own interests by enforcement of contract terms, and is not required to forego enforcement of contract terms to put the borrower's interests ahead of its own. *Production Credit Ass'n. v. Croft*, 423 N.W.2d 544, 143 Wis.2d 746 (1988); *Price v. Wells Fargo Bank, supra*, 261 Cal.Rptr. 735, 740, 213 Cal.App.3d 465 (1989); *Kham & Nate's Shoes v. First Bank of Whiting, supra; M/A–Com Security Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir.1990).

■ The relevant provisions in the umbrella contract and the Loan and Security Agreement are unambiguous, and Plaintiffs do not contend otherwise. Those provisions required Plaintiffs to supply to Defendant all required documents by June 30, 1981, as a condition precedent to any obligation of Defendant to make a requested loan, and there is no dispute as to the documentation both parties knew was required. Plaintiffs must, therefore, raise some question of material fact that they did fulfill the mutually agreed conditions precedent, thereby requiring Defendant to fund the transactions. Defendant cannot be required by a good faith covenant to forego its right to fulfillment of all conditions precedent.

Plaintiffs have conceded through counsel at oral argument that they do not claim that all documents required were timely submitted for the disputed transactions, and that there is no evidence of any prior course of dealing which would suggest that less than full performance of all conditions precedent had ever been accepted by Defendant. Moreover, Plaintiffs have submitted no evidence of complete submissions in the disputed transactions, and their deposed witnesses have admitted not only that they cannot testify to full submissions for those transactions, but that some documentation was, to their knowledge, missing.

■ As to Plaintiffs' claims on three of the five disputed transactions, Economics Laboratory No. 2, RCA No. 2, and Dow Chemical No. 6, there is undisputedly no evidence of record that all contractually required documentation was timely submitted to Defendant. Plaintiffs have raised an argument, after six years of litigation, that "sufficient" documentation was submitted to require funding of those transactions. However, as the good faith covenant does not require waiver of contractual rights, and as there is no evidence that a practice of such waivers had ever developed, between these parties, and finally as Plaintiffs are unable to identify exactly what documentation was indeed timely submitted so that its sufficiency can be determined, that argument must fail. Plaintiffs further argue that the case of *TCP Industries, Inc. v. Uniroyal*, 661 F.2d 542 (6th Cir.1981) required admission of expert testimony as to industry practice in performance of such a contract on the issue of good faith compliance. The TCP case, however, is inapposite because the expert testimony held appropriate therein concerned industry practice in implementation of a contract which permitted the price term to fluctuate with current events. This contract, by contrast, was absolutely specific as to all terms, and required *all* enumerated documents to be received by June 30, 1981. No expert analysis is required, and the good faith covenant may not override the unambiguous conditions precedent. Unambiguous contract terms may not be given an interpretation at variance with their plain meaning. *Greyhound Credit Union v. Aetna Life*, 381 Mich. 683, 167 N.W.2d 274 (1969).

The failure of the EL No. 2, RCA No. 2 and Dow No. 6 transactions to fund was not the result of any breach by defendant of the implied covenant of good faith, because that covenant would not require Defendant either to waive full performance of the conditions precedent to lending, or to extend the express expiration date of the umbrella contract to provide Plaintiffs more time to fulfill those conditions.

■ The fourth of the disputed transactions, RCA No. 1, has a different history. Defendant, undisputedly, stopped work on it at approximately June 25, 1981. Thereafter, however, on July 7, 1981, Defendant agreed to proceed with it at the interest rate which had governed the then-expired contract.

This court found in its prior summary judgment and the Sixth Circuit Court of Appeals affirmed, that the brief time period between Defendant's refusal to go forward and its subsequent decision to proceed was no more than a temporary nonprejudicial failure to cooperate, and not a breach of contract. There is evidence that RCA Corporation remained willing to proceed with this transaction as late as August, 1981, and none to the contrary.

Plaintiffs have therefore failed to present any evidence that RCA abandoned the transaction because of the delay, or that Defendant's lapse had any prejudicial effect whatsoever on Plaintiffs. It therefore remains undisputed that the actions of Defendant did not contribute to the ultimate failure of the RCA No. 1 transaction to fund. As the delay was without effect or disadvantage, it cannot constitute a breach of the good faith covenant.

■ As was previously held by this court and the Sixth Circuit, the last transaction, for Chemical Network, was not funded due to assignments made by Plaintiffs of their interest in the pertinent lease agreement to third parties in violation of the express condition of the Loan and Security Agreement requiring Plaintiffs to first request Defendant's consent prior to making any assignment. Section 2.11 of the Loan and Security Agreement Provides:

> Without the prior written consent of the lender, the borrower will not: ... (c) sell, mortgage, transfer, assign, or hypothecate ... its interest in the equipment or in a lease or any part thereof or in any proceeds thereof.

The implied good faith covenant does not require waiver of an express contractual right.

Accordingly, for all the reasons outlined above, the court finds that there is no issue raised as to any material fact suggesting Defendant's breach of the implied covenant of good faith, and that Summary Judgment must enter for Defendant.

IT IS SO ORDERED.