LLMD OF MICHIGAN, INC.,
General Partner

v.

MARINE MIDLAND REALTY CREDIT
CORPORATION, et al.

Civ. A. No. 89–9163.

United States District Court,
E.D. Pennsylvania, C.D.

March 31, 1992.

Robert A. Swift, Kohn, Savett, Klein & Graf, Philadelphia, Pa., for plaintiff.

M. Duncan Grant, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Marine Midland Realty Credit Corp.

Thomas M. Kittredge, Morgan Lewis & Bockius, Philadelphia, Pa., for USLIFE Life Ins. Co.

## MEMORANDUM

BARTLE, District Judge.

This case concerns a $10 million loan commitment in connection with the attempted purchase of a 177 acre tract in Springfield, Michigan. Plaintiff LLMD of Michigan, Inc., General Partner, trading as Wintoll Associates Limited Partnership ("LLMD"), the potential purchaser, has brought this diversity action against potential lenders, Marine Midland Realty Credit Corporation ("Marine Midland") and the USLIFE Life Insurance Company ("USLIFE") for alleged breach of the contractual commitment.

In order to finance the purchase and renovation of the subject property, LLMD obtained signed loan commitment letters from both Marine Midland and USLIFE. Marine Midland committed to loaning up to $10 million for an initial term of thirty-six (36) months, with two possible six (6) month renewals. At all times Marine Midland contemplated acting only as an interim lender. Its commitment letter identified USLIFE as the permanent lender and specifically required that LLMD, Marine Midland and the "Permanent Lender," negotiate a "Buy–Sell Agreement" which was "acceptable" to Marine Midland.[1] USLIFE's commitment for the permanent $10 million loan, with an October 12, 1992 closing date, was similar. It provided for the negotiation of a "Tri–Party Buy–Sell Agreement" on terms and conditions "satisfactory" to USLIFE.[2]

Closing on the interim loan, which was originally scheduled to occur on or before November 30, 1989, was twice extended, first to December 14, 1989 and then to December 31, 1989. This closing did not occur, however, because a buy-sell agreement "acceptable" to Marine Midland and "satisfactory" to USLIFE was never finalized.

Plaintiff asserted several claims for relief in its Amended Complaint: Breach of Contract (Count I); Breach of Duty of Good Faith and Fair Dealing (Count II); and Promissory Estoppel (Count III). Defendants thereafter filed counterclaims

---

1. Section 3.8 of Marine Midland's commitment letter provided in full as follows:

   *Buy–Sell Agreement*: Agreement among the Borrower, the Permanent Lender and Marine, *acceptable to Marine,* concerning the purchase or payment of the Loan out of the proceeds of the permanent loan, providing, among other matters, that (a) Permanent Lender shall purchase the Loan and the instruments and documents evidencing and securing the Loan on a date within the final 30 days of the term of Marine's loan, such date to be at least 60 days after Marine delivers written notice to Permanent Lender that such purchase is required; provided, however, that such date may be adjusted by the terms of a further notice given by Marine to Permanent Lender at least 15 days before the requested adjusted purchase date; and provided, further, that Borrower and Marine have met the terms and conditions of the Permanent Loan Commitment; (b) Permanent Lender shall not extend its Permanent Loan Commitment unless Marine extends the Loan for a Renewal Term and (c) Permanent Lender will advise Marine of each extension or renewal of its Permanent Loan Commitment.
   (emphasis added).

2. Paragraph 45 of USLIFE's commitment letter provided in full as follows:
   Lender shall enter into a Buy–Sell Agreement among Lender, Borrower and Borrower's interim lender providing acquisition and construction financing to Borrower, *on terms and conditions satisfactory to Lender* in a document in form and substance satisfactory to Lender and its counsel.
   (emphasis added).

seeking payment of fees, expenses and costs as provided for in their commitment letters.

Presently before the Court are motions filed by Marine Midland and USLIFE seeking summary judgment as to all of plaintiff's claims for relief. Marine Midland has also requested summary judgment on its counterclaim.

■ Both defendants argue that Michigan law should be applied in determining their summary judgment motions. In support of this argument they cite the choice of law provision in Marine Midland's commitment letter that "the Loan and any related instruments and documents will be governed by the laws of the State of Michigan except the Guaranties will be governed by the laws of the State of Delaware," and a similar provision in USLIFE's commitment letter that "[l]ender agrees that the Commitment and all Loan documents, including but not limited to the buy/sell agreement and the Guaranty shall be construed in accordance with the laws of the State of Michigan."

Plaintiff does not specifically agree that Michigan law is the applicable law. In view, however, of the choice of laws provisions contained in the commitment letters, and the fact that guaranties are not at issue in connection with the pending motions, this Court holds that Michigan law is the appropriate law to be applied.

■ A federal court sitting in a diversity case must follow the conflict of law rules of the jurisdiction in which the Court sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 489, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Pennsylvania applies contractual choice of law provisions which are not unreasonable. *E.g. American Air Filter Co., Inc. v. McNichol*, 527 F.2d 1297, 1299 n. 4 (3d Cir.1975); *Central Contracting Co. v. Youngdahl & Co., Inc.*, 418 Pa. 122, 209 A.2d 810 (1965). In this case, given the situs of the property and LLMD's status as a Michigan company, the choice of Michigan law plainly was reasonable.

The standards for deciding summary judgment motions are well settled. To obtain summary judgment the moving party(ies) must establish that no genuine issues of material fact remain in dispute. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In deciding whether this standard has been met the evidence must be viewed in the light most favorable to the nonmoving party. *Mellon Bank Corp. and Mellon Bank, N.A. v. First Union Real Estate Equity and Mortgage Investments*, 951 F.2d 1399 (3d Cir.1991). Accordingly, all facts in the record, and all reasonable inferences deduced therefrom, will be construed by this Court in the light most favorable to plaintiff LLMD.

■ Notwithstanding the heavy factual burden which must be met to obtain summary judgment, defendants assert that the record affirmatively establishes the absence of any genuine issues of material fact.[3] Plaintiff vehemently contends otherwise. Both sides have filed voluminous briefs which are largely preoccupied with dissecting the lengthy, complicated and intricate discussions and negotiations between and among the parties to finalize a buy-sell agreement which was acceptable to both Marine Midland and USLIFE.

Defendants contend that they are not liable to plaintiff because the parties did not agree on a "buy-sell agreement" which was "acceptable" to Marine–Midland and "satisfactory" to USLIFE, as required under the commitment letters. Plaintiff does *not* seek to counter this assertion by arguing that an acceptable and satisfactory "buy-sell" agreement was reached. Instead, plaintiff argues that defendants were subject to a covenant of good faith and fair dealing while negotiating the

---

**3.** USLIFE additionally suggests that plaintiff lacks the necessary standing to maintain an action against USLIFE because the commitment letter issued by USLIFE was executed by borrowers Leon Winitsky and Michael Winitsky, as general partners for Winitsky Associates ("Winitsky"), and not by plaintiff LLMD. The Court finds, however, that plaintiff is the real party in interest in this matter. The record reveals that plaintiff LLMD is the entity contemplated in both the USLIFE and the Marine Midland commitment letters.

three-way buy-sell agreement which was a necessary prerequisite to the loan's closing, and that genuine issues of material fact exist as to defendants' good faith and fair dealing.[4]

■ It is well settled under Michigan law that there exists an implied covenant of good faith and fair dealing which applies to the performance and enforcement of contracts. *E.g. Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873, 877 (5th Cir.1989); *Ferrell v. Vic Tanny International, Inc.*, 137 Mich.App. 238, 357 N.W.2d 669, 672 (1984). *See also Restatement (Second) of Contracts*, § 205 and *Rowe v. Montgomery Ward, Inc.*, 437 Mich. 627, 473 N.W.2d 268, 278 (1991). While the implied covenant of good faith does not apply where the parties have " 'unmistakedly expressed' their respective rights," it does apply where a contract "defers decision on a particular term, omits terms or provides ambiguous terms" or where " 'a party to a contract makes the manner of its performance a matter of its own discretion.' " *Hubbard, supra* at 877, 876–877.[5]

■ Consistent with the Michigan approach, the implied covenant of good faith has been applied where the parties have reached a binding loan commitment, but have left open for future negotiation various terms of the commitment. *E.g. New England Mutual Life Insurance Company v. Stuzin*, 1990 WL 252171, 1990 U.S.Dist.LEXIS 13137 (D.Mass.1990). When parties enter into such a preliminary commitment whereby they "accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement within the scope that has been settled in the preliminary agreement," they also thereby concomitantly accept the obligation of negotiating the open terms in good faith. *See Teachers Insurance and Annuity Association v. Tribune Company*, 670 F.Supp. 491, 496–499 (S.D.N.Y.1987). These are precisely the circumstances presented in the case at bar.

■ Defendants maintain that they are not subject to the covenant of good faith because the provisions allowing them to decide if the buy-sell agreement was "satisfactory" or "acceptable" were express contractual terms which, under Michigan law, could not be overridden or replaced by the covenant of good faith. *E.g. Van Arnem Company v. Manufacturers Hanover Leasing Corporation*, 776 F.Supp. 1220 (E.D.Mich.1991); *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041 (6th Cir.1990). Marine Midland argues that it was not obliged to fund the interim loan because an agreement among the parties could not be finalized. USLIFE explains this failure as arising from (1) the inability of the parties to agree on the standard to determine if a material adverse event had occurred with respect to the insolvency provision of the commitment letter; and (2) its unwillingness to forego certain indemnifications of the seller with regard to the property's environmental condition. Defendants' arguments about inapplicability

---

**4.** It cannot be concluded that the commitment letters were not binding commitments simply because further negotiations were required. A review of these lengthy documents, which were negotiated and entered into by the parties, plainly establishes that they were intended to be enforceable contracts. While these commitments specified numerous conditions precedent, it obviously was not intended that they could be arbitrarily ignored and the parties do not seriously contend otherwise.

**5.** Borrowing from a law review article, the Fifth Circuit in *Hubbard, supra,* n. 2 at 877, noted that:

> While the Michigan cases do not define "discretion," we look to this discussion:

> Discretion in performance arises in two ways. The parties may find it to their mutual advantage at formation to defer decision on a particular term and to confer decisionmaking authority as to that term on one of them. Discretion also may arise, with similar effect, from a lack of clarity or from an omission in the express contract. In either case, the dependent party must rely on the good faith of the party in control. Only in such cases do the courts raise explicitly the implied covenant of good faith and fair dealing, or interpret a contract in light of good faith performance.

> Applying this analysis, each defendant's approval of the buy-sell agreement was plainly " 'a matter of its own discretion.' "

of the implied covenant of good faith are unpersuasive.

The provisions relied upon by defendants, requiring that a "buy-sell" agreement be "acceptable" to Marine Midland and "satisfactory" to USLIFE, are the types of discretionary provisions which are subject to the covenant of good faith. *See Hubbard, supra.* These provisions are not precise contractual terms to which the covenant of good faith is inapplicable. The cases relied upon by defendants are inapposite. Many involve fully formed contracts, such as dealership contracts in which one party specifically agreed to a definite and exact condition. Others, like the termination of employment at will cases, are similarly factually inapposite.[6]

The parties have devoted one hundred (100) or more pages of their briefs to parsing the evidence and trying to explain why defendants did or did not act in good faith during the buy-sell negotiations. This Court's review of the pleadings and the record unquestionably establishes that genuine issues of material fact exist with regard to the defendants' exercise of good faith. Accordingly, defendants' motions for summary judgment will be denied as to plaintiff's claim for breach of contract.

■ Defendants additionally claim that they are entitled to summary judgment on Count II of the Amended Complaint because Michigan law does not recognize an independent cause of action for breach of an implied covenant of good faith. This claim should have been characterized as a motion for judgment on the pleadings since it does not depend on matters outside the pleadings. Fed.R.Civ.P. 12(c). Defendants' argument, however, is well taken. *See e.g. Van Arnem, supra; Dallman v. Oakland University,* 172 Mich.App. 502, 432 N.W.2d 304, 306 (1988). Accordingly, judgment on the pleadings will be granted as to Count II of the Amended Complaint.

■ Finally, defendants seek summary judgment on the promissory estoppel action contained in Count III of the Amended Complaint. Under Michigan law the elements of promissory estoppel are:

(1) a promise, (2) that the promisor reasonably should have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances requiring that the promise be enforced if injustice is to be avoided.

*Parkhurst Homes, Inc. v. McLaughlin,* 187 Mich.App. 357, 466 N.W.2d 404, 406 (1991). Defendants argue that those elements cannot be satisfied and that promissory estoppel, in any event, "is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract." *General Aviation,* 915 F.2d at 1042 (quoting *Walker v. KFC Corp.,* 728 F.2d 1215, 1220 (9th Cir.1984)).

Plaintiff maintains, however, that the courts are reluctant to grant summary judgment where a borrower has detrimentally relied upon a promise to make a loan and that genuine issues of material fact exist with respect to various commitments and assurances which were offered. Insofar as it is possible that evidence could be developed at trial to support plaintiff's promissory estoppel claim, this Court will not, at this juncture, grant summary judgment. Rather, the Court will await the development of the record at trial.

The Court also will not grant summary judgment with respect to Marine Midland's counterclaim. As previously noted, genuine questions of material fact exist on the question of whether Marine Midland acted in good faith. Other questions may also exist, such as whether there was a material breach. Summary judgment on the counterclaim is unwarranted and will be denied.

## ORDER

AND NOW, this 31st day of March, 1992, for the reasons set forth in the ac-

---

**6.** No need exists, therefore, to consider the defendants' related contention that a right, if properly bargained for, "is given full effect and may be exercised for any reason." *Cloverdale Equipment Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 938 (6th Cir.1989).

companying Memorandum, it is hereby ORDERED that:

(1) the motions of defendants Marine Midland Realty Credit Corporation and US-LIFE Life Insurance Company, for summary judgment as to Counts I and III of the Amended Complaint, are DENIED;

(2) the motions of defendants Marine Midland Realty Credit Corporation and US-LIFE Life Insurance Company for judgment on the pleadings, incorrectly denominated as motions for summary judgment, as to Count II of the Amended Complaint, are GRANTED; and

(3) the motion of defendant Marine Midland Realty Credit Corporation for summary judgment as to its Counterclaim is DENIED.