**LAZAR'S AUTO SALES, INC.,
et al., Plaintiffs,**

v.

**CHRYSLER FINANCIAL
CORPORATION et al.,
Defendants.**

**Chrysler Financial Company
L.L.C., Plaintiff,**

v.

**Charles Cartalemi and Joan
Cartalemi, Defendants.**

Nos. 99 Civ. 213(CM), 99 Civ. 2484(CM).

United States District Court,
S.D. New York.

Feb. 1, 2000.

Jonathan D. Deily, Deily, Dautel & Mooney, L.L.P., Albany, NY, for Plaintiff.

John S. Ciulla, Bellavia & Kassel, P.C., Mineola, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER DETERMINING MOTIONS BY VARIOUS PARTIES FOR SUMMARY JUDGMENT

McMAHON, District Judge.

On January 5, 1999, Plaintiffs—corporations under the control of Charles Cartalemi that hold franchises to sell automobiles from various manufacturers—commenced the first above-captioned action in the New York State Supreme Court. There, they sought, *inter alia,* to enjoin Defendants from terminating dealer financing that Defendant Chrysler Financial Corporation had been providing to all three dealerships. Plaintiffs moved for a preliminary injunction; Defendants countered by removing the action to this Court. On March 2, 1999, this Court released an opinion and order in 99 Civ. 213, denying Plaintiffs' motion for a preliminary injunction against the termination of its dealer financing by CFC. *See Lazar's Auto Sales, Inc. v. Chrysler Financial Corp., et al.,* 1999 WL 123501 (S.D.N.Y. March 2, 1999). Familiarity with that opinion is presumed.

Since that time, CFC has commenced its own action against Plaintiffs seeking to recover amounts due it from the dealerships and from Cartalemi and his wife Joan, pursuant to guarantees that they signed. The two actions have been consolidated. Since last March, the parties have conducted extensive discovery. Now, on a full record, CFC and Chrysler have moved this Court for summary judgment dismissing the actions commenced by Plaintiff Lazar's.

For the reasons set forth below, the motions are granted and the original action (99 Civ. 213) is dismissed.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). It is the non-moving party's burden to "demonstrate to the court the existence of a genuine issue of material fact." *Lendino v. Trans Union Credit Information Co.,* 970 F.2d 1110, 1112 (2d Cir.1992). In opposing summary judgment, a party may not rest upon un-

supported allegations or denials, or simply claim without support that evidence adduced by the movant in support of the motion is not credible. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Mycak v. Honeywell, Inc.,* 953 F.2d 798, 801–802 (2d Cir.1992).

## II. REASONS FOR DECISION

### A. *The First Cause of Action (Federal Dealer's Day in Court Act)*

■ The first claim for relief in 99 Civ. 213 is pleaded by Plaintiff Lazar's Auto against both Defendants under the federal Automobile Dealer's Day in Court Act ("ADDCA"), 15 U.S.C. § 1222 *et seq.* Lazar's claims that Chrysler and CFC are "automobile manufacturers," as defined in 15 U.S.C. § 1221(a), and that they failed to act in "good faith," as defined in 15 U.S.C. § 1222(e), in their performance under the June 1985 Dealer Sales and Service Agreement between Lazar's Auto and Chrysler. Specifically, Lazar's Auto contends that CFC, at the behest of and as an agent for Chrysler, retaliated against Lazar's Auto because it refused to accept a franchise "swap" with a competing dealership in the Peekskill/Yorktown area, Salerno Chrysler Plymouth Dodge, Inc. The acts of retaliation attributed to CFC by Lazar's Auto include, *inter alia,* performing excessive bank cutoffs and floor plan audits; wrongfully rejecting retail installment contracts and lease contracts, resulting in bounced drafts; suspending and then terminating its wholesale credit line; and otherwise interfering with Plaintiffs' relationships with BMW and General Motors.

*(a) As against CFC.* This claim must be dismissed as a matter of law as against CFC because CFC is not an automobile manufacturer. To put it as simply as possible, CFC does not make cars. It provides financing for persons (in this case, automobile dealers) who want to purchase cars at wholesale for resale at retail. Nor is CFC a party to the 1985 Sales and Service Agreement.

The only way that CFC can be held liable under the ADDCA is if the evidence establishes that it is an agent of Chrysler or is otherwise under Chrysler's control. *See Keys Jeep Eagle, Inc. v. Chrysler Corp.,* 897 F.Supp. 1437 (S.D.Fla.1995), *aff'd without opinion,* 109 F.3d 773 (11th Cir.1997). In the March 2 opinion, this Court noted the near identity between the allegations in *Keys Jeep Eagle* and those in this matter, as well as the fact that New York and Florida law on the question of agency is identical. (Memorandum. Decision and Order ¶¶ 7–8.) I observed that Plaintiffs would have to establish both that Chrysler was responsible for CFC's apparent authority to conduct the transactions in question and that the Lazar's dealership reasonably relied on the representation of CFC. (Memorandum Decision and Order ¶ 8.)

The record contains no evidence to support a finding that CFC acted as Chrysler's agent—or even at its behest—in any respect concerning Lazar's Auto. Although many months have passed since the preliminary injunction motion was made and much discovery has transpired, Lazar's Auto has not turned up any of evidence to support its speculation that Chrysler used CFC to try to put Lazar's Auto out of business so that it could transfer the lucrative Jeep–Eagle franchise to its favored dealer, Salerno, as part of the implementation of Chrysler's "Project 2000." Plaintiffs have not directed this Court's attention to a single item of evidence to support their belief that someone at Chrysler directed, requested, or even suggested that CFC help Chrysler implement Project 2000, heighten its financial scrutiny of Plaintiff, or suspend or terminate Lazar's credit facilities. For that reason alone, the claim of agency could never be submitted to a jury, and the first cause of action must be dismissed as against CFC on the ground that it is not an automobile dealer.

■ Even if there were evidence that CFC was Chrysler's agent for ADDCA

purposes, no competent evidence creates a disputed issue of material fact concerning CFC's alleged failure to act in "good faith" within the meaning of the ADDCA in its dealings with Lazar's Auto. As discussed in the March 2 opinion, "good faith" has a narrow and restricted two-pronged meaning under the ADDCA. *See Empire Volkswagen, Inc. v. World–Wide Volkswagen Corp.*, 814 F.2d 90, 95 (2d Cir.1987). First, the Plaintiff must demonstrate that an "automobile manufacturer" coerced, intimidated or threatened him. Second, the plaintiff must prove that any coercion or intimidation was designed to achieve some improper or wrongful objective. Indeed, summary judgment will be granted unless Plaintiff introduces some evidence that CFC made a *wrongful* demand and then *enforced it by threats or coercion or intimidation. See Quarles v. General Motors*, 597 F.Supp. 1037 (W.D.N.Y.1984), *aff'd*, 758 F.2d 839 (2d Cir.1985).

No such evidence has been produced. Plaintiff contends that the business practices that CFC clamped down on were perfectly acceptable for 12 or 13 years prior to the period when Chrysler allegedly wanted to put Lazar's out of business pursuant to "Project 2000." From that, Lazar's claims a jury could infer that CFC's sudden insistence on adherence to contractual standards constituted bad faith. Assuming *arguendo* that CFC tolerated shoddy business practices in the past, that would not preclude it from demanding strict adherence to the terms of the contract in the future. The 1985 Master Security Agreement between Lazar's Auto and CFC's predecessor in interest so states, at Section 8.6; so does the 1994 Security Agreement and Master Credit Agreement between Lazar's Auto and CFC's predecessor in interest. Thus, under the terms of the contracts themselves, Plaintiff's premise is wrong.

Moreover, as the Court discussed in the March 2 opinion, in each and every instance that Lazar's cites as an example of CFC's bad faith, CFC had a legitimate business reason to take action against the dealer. When Cartalemi breached Section 7.0 of the Security Agreement by refusing to give CFC access to the dealer's books and records, CFC had a contractual right to refuse to extend credit to Lazar's. When Lazar's bounced checks, CFC had a contractual right to step up its bank audits of the dealer's finances. When CFC received contracts that failed to comply with the requirements of truth in lending laws, it had the right to "bounce" the contracts until the errors were corrected—and there is no evidence that either the contracts were correct as initially submitted, or that CFC failed to honor them once the errors were fixed. When a "book audit" showed that CFC was not being paid on a timely basis for the vast majority of cars sold by all three of Plaintiff dealerships, CFC had the right—the conceded right (*see* Cartalemi Dept. at 128)—to perform more frequent inventory audits. Lazar's Auto and Mr. Cartalemi have not produced a shred of evidence, despite months of discovery, that even suggests let alone proves, that this Court's conclusions of ten months ago were erroneous.

Plaintiff's contention that CFC permitted Salerno to sell Jeeps in violation of Lazar's exclusivity agreement is frivolous. That there was a Jeep on Salerno's property one day—which I will assume for purposes of this motion—neither establishes that it was for sale nor that CFC had anything to do with the fact that it was there. No other evidence concerning the alleged violation of Plaintiff's franchise exclusivity has been submitted to this Court.

Finally, Plaintiffs have not submitted any evidence to controvert CFC's contention, and this Court's prior finding, that CFC had every right to suspend Lazar's wholesale line of credit on two occasions.

In mid-July 1998, in light of Cartalemi's continuing refusal to permit CFC to have access to its books and records, CFC suspended Lazar's line of credit until an audit could be satisfactorily completed. Unless

rebutted, the sworn testimony of CFC's Peter Buteau establishes that CFC suspended Lazar's credit on July 17, one day after being advised that Cartalemi would not permit his books to be audited on July 20. While Mr. Cartalemi would have the Court believe that he has raised an issue of fact about whether his refusal to permit access or CFC's credit suspension came first, he has not done so. At no point has Mr. Cartalemi, or any competent witness, stated under oath that CFC suspended the credit before being told that no audit could take place. The best Mr. Cartalemi can claim is that he does not recall when he told CFC that the July 20 audit could not go forward. Cartalemi's failure of recollection does not suffice to raise an issue of fact in the face of Buteau's clear recollection that Lazar's balked on July 16, one day before credit was suspended.

On September 23, 1998, CFC again suspended Lazar's credit, this time for good. The reason was Cartalemi's refusal to meet with a CFC representative or to submit a viable, professional business plan for getting the dealerships back on a sound financial footing. This, coupled with a finding that the three dealerships were substantially undercapitalized, more than justified CFC's decision to terminate its arrangement with Plaintiffs—an action it was contractually entitled to take.

■ *(b) As against Chrysler.* The ADDCA claim must be dismissed against Chrysler, even though DaimlerChrysler is without question an "automobile dealer" within the meaning of the ADDCA. It is the actions of CFC that are alleged to have wronged the Lazar's dealerships; Chrysler's alleged liability is predicated on an agency relationship and is wholly derivative. Cartalemi testified that he was upset with Chrysler Corporation, but he also testified that no Chrysler employee or representative ever threatened to terminate his franchise if he refused to swap products with Salerno. (Cartalemi EBT at 405–406). Plaintiff's theory was that Chrysler "came after me with bogus claims through Chrysler Financial." (Cartalemi EBT at 285). There being no evidence that CFC's claims were bogus, or that its actions were unjustified, or that CFC took the actions it did at the behest of Chrysler, there is no ADDCA claim against Chrysler.

It is particularly troubling to the Court that the Plaintiffs have persisted in these contentions despite my clear indication almost a year ago that Mr. Cartalemi's speculation and conjecture were insufficient to make out his claims. If this opinion is little more than a rehash of its March 2 predecessor, that is because today's post-discovery record contains no more hard evidence of wrongdoing by CFC or Chrysler than did yesterday's pre-discovery record.

The First Cause of Action is dismissed.

B. *The Second, Third, Fourth and Fifth Causes of Action (New York Franchise Motor Vehicle Dealer Act, New York Vehicle and Traffic Law, Section 460 et seq.)*

Plaintiffs' second, third, fourth and fifth claims are brought against Chrysler pursuant to New York's statutory counterpart to the ADDCA, the New York Dealer Act, VTL § 460 et seq.

■ Count 2 is simply a restatement of the allegations of Count 1, but relies on state rather than federal law. The two statutory schemes are virtually identical. Therefore, Count 2 must be dismissed for the same reasons as Count 1—because Plaintiff has introduced no evidence of coercion, either directly by Chrysler or through the "agency" of CFC.

Count 3 alleges that Chrysler is liable to Lazar's Auto Sales for violation of Section 463(2)(d)(1) of the New York Dealer Act, which makes it unlawful for any automobile manufacturer "to terminate, cancel or refuse to renew the franchise of any franchised motor vehicle dealer except for due cause." Chrysler has never terminated, cancelled or refused to renew Lazar's franchise; its dealership is still open for busi-

ness today, selling Chrysler automobiles. To paraphrase a famous old commercial, where's the breach?

Count 4 alleges that Chrysler violated Section 463(2)(u) of the New York Dealer Act by using CFC, a subsidiary or affiliated corporation, to accomplish what would otherwise be unlawful conduct on its part. Obviously, summary judgment must be granted dismissing this claim too, since Plaintiff points to nothing (except his own feeling that the intersection of his resistance to Chrysler's "Project 2000" and CFC's enhanced scrutiny of his finances "just couldn't be a coincidence") to support his contention that CFC acted at the behest or direction of its parent corporation.

Finally, in Count 5, Plaintiff Lazar's asserts that Chrysler violated Section 463(1) of the New York Dealer Act, which makes it unlawful for any automobile manufacturer "directly or indirectly to impose unreasonable restrictions on the franchised motor vehicle dealer relative to transfer." It is undisputed that Chrysler never insisted that Lazar's give up its Jeep Eagle dealership, and nothing in the Dealer Act prohibited Chrysler from asking it to do so. Normally, this provision is invoked when dealers request approval of a transfer, and there is no evidence that Lazar's ever sought approval from Chrysler to change its automobile mix.

## C. Plaintiffs' Common Law Claims

### (a) Claim for Breach of Contract against Chrysler (Count 6)

Plaintiff contends that Chrysler breached an unspecified provision of the Dealer Agreement between it and Lazar's. Plaintiff has not identified which provision of the contract was breached, except to say that the entire course of dealing from the inception of the Chrysler "2000 Plan" through the termination of its financing by CFC constitutes a violation of the covenant of good faith and fair dealing that inheres in every contract. (Pl.Mem in Opposition

to Defendant's Motion For Summary Judgment, ¶¶ 23–25.)

■ There are two problems with this argument. The first is that, under Michigan law (which governs the interpretation of the contract, see Dealer Agreement, ¶ 42), there is no implied covenant of good faith and fair dealing separate and apart from some specific provision of the contract. *See Van Arnem Co. v. Manufacturers Hanover Leasing Corp.*, 776 F.Supp. 1220, 1223 (E.D.Mich.1991). Since Plaintiff has failed to identify which provision of the Dealer Agreement Chrysler breached, it has failed to make out any claim.

■ The second problem, of course, is that there was never any breach of the Dealer Agreement by Chrysler. The only action taken by Chrysler vis a vis Plaintiff was its request that Plaintiff swap franchises with Salerno's. Making that request did not breach the Dealer Agreement, and when Lazar's turned Chrysler down, Defendant did nothing more about the matter. Plaintiff's failure to adduce any evidence to support its grand conspiracy theory makes all of CFC's actions irrelevant—even if they were wrongful, which of course they were not.

The Sixth Cause of Action is Dismissed.

### (b) Breach of Contract Against CFC (Seventh Cause of Action)

■ The Seventh Cause of Action alleges that CFC breached the three dealerships' Security and Master Credit Agreements by performing the acts discussed under the analysis of the First Cause of Action, and most particularly by terminating the dealerships' financing. Unfortunately, the Plaintiffs do not specify what provisions were breached, leaving only a claim predicated on a breach of the alleged obligation of good faith and fair dealing that supposedly inheres in every contract. (Charles Cartalemi, Dep. at 424–425). This Court has already concluded that lending decisions by CFC are purely discretionary and may be terminated by CFC

at any time. Under New York law, a financing institution does not breach any duty of good faith and fair dealing when it exercises its contractual right to terminated financing. *See Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc.*, 192 A.D.2d 1066, 1067, 596 N.Y.S.2d 230 (4th Dept. 1993). In fact, a lender may exercise any contractual right without breaching some duty of "good faith." *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 15, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988). Everything CFC did to the Cartalemi dealerships was authorized by the various contracts it had with those dealerships. Therefore, there cannot possibly have been any breach of the agreements.

The Seventh Cause of Action is Dismissed.

#### (c) Tortious Interference With Contract Against CFC and Chrysler (Eighth Cause of Action)

Plaintiffs' Seventh cause of action alleges that both Chrysler and CFC tortiously interfered with its contractual relationships with General Motors and BMW, whose franchised dealerships Mr. Cartalemi also held, and for which CFC also provided floor financing. The gravamen of Plaintiffs' claim is that CFC's termination of the GM and BMW dealerships financing somehow constituted a wrongful interference with the Cartalemis' ability to do business with GM and BMW.

■ The elements of tortious interference with contract are well-settled under New York law. The elements include: the existence of a valid contract between the plaintiff and some third party; knowledge of that contract by the defendant; defendant's intentional inducement of a breach by the third party to the contract;

and damages to the plaintiff as a result of the third party's breach. *See Int'l Minerals and Resources, SA v. Pappas*, 96 F.3d 586, 595 (2d Cir.1996), *citing Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993). The third's party's breach must have been caused by the defendant, and the plaintiff must prove that the third party would not have breached except for the wrongful activities of the defendant. *See Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir.1990). Moreover, the action that induces the alleged breach cannot have been one that the accused tortfeasor was privileged to take. *See Felsen v. Sol Cafe Mfg. Corp.*, 24 N.Y.2d 682, 301 N.Y.S.2d 610, 249 N.E.2d 459 (1969).

■ In this case, Plaintiffs do not assert, let alone prove, that either GM or BMW breached any contract with them. Instead, they assert that they, the Plaintiffs, were forced to breach *their* agreements with BMW and GM when CFC cut off their financing. (Pl.Mem of Law at 22). That is not the fact pattern contemplated by the tortious interference doctrine known as inducing breach of contract, since a plaintiff's own breach of contract cannot cause it any damage.[1]

■ Two other factors warrant summary judgment dismissing this claim. As against Chrysler, the claim must be dismissed for the reason that most of the other claims must be dismissed: there is no evidence linking Chrysler to CFC's allegedly wrongful decision to cut off Cartalemi's financing, either directly or through any theory of agency. And as against CFC, there is no evidence in this record from which a reasonable juror could conclude that CFC was not contractually privileged to cut off financing to the Plaintiff's

---

1. There is no reason to address Chrysler's "belt and suspenders" argument under the alternative theory of tortious interference with prospective business advantage, since that doctrine is generally invoked where a plaintiff has no contract with the third party, only the prospect of one. Here, Cartalemi's dealerships had contracts with both GM and BMW that were similar to Lazar's contract with Chrysler. So if there was interference, it was interference with those existing contractual relationships, not with any prospective relationships.

dealerships. Since CFC was entitled to cut the Plaintiffs off, it did not tortiously (i.e., wrongfully) interfere with the dealerships' relations with their suppliers. *See, e.g., Campbell v. Gates*, 236 N.Y. 457, 460, 141 N.E. 914 (Ct.App.1923) (noting that a defendant will be liable for tortious interference with contract rights only in those cases where the interference is improper and without reasonable justification).

The Eighth Cause of Action is dismissed.

### (d) Catch–All Tort Against Chrysler (Ninth Cause of Action)

The Plaintiffs' eighth cause of action states only that Chrysler and CFC are liable to the Plaintiffs for their knowing, intentional, willful and malicious actions, which were taken in disregard of the Plaintiffs' contract, statutory and common law rights. The Plaintiffs' complaint does not state a claim for any cognizable tort, but appears to be a way of asserting that Plaintiffs are entitled to punitive damages. Of course, as they are not entitled to compensatory damages under any theory, Plaintiffs can hardly be entitled to punitive damages.

 If Plaintiffs are attempting to make out a claim for a prima facie tort, they have failed to do so. This highly disfavored cause of action derives from the common law action on the case that permitted recovery for intentional harm inflicted by acts that might otherwise be lawful. The elements of such a claim are (1) the intentional infliction of harm on another; (2) resulting in damage; (3) without excuse or justification; (4) by an act or series of acts that would otherwise be lawful. *See, e.g., Knapp Engraving Co. v. Keystone Photo Engraving Corp.*, 1 A.D.2d 170, 172, 148 N.Y.S.2d 635, 637 (1st Dept. 1956). *See also Gurwitz v. Leichter*, 19 Misc.2d 749, 192 N.Y.S.2d 321, 322 (2nd Dept.1959). It should not be necessary to go through the recital of relevant facts and findings yet again. Chrysler committed no act that caused Plaintiffs any harm, and CFC did not do anything wrongful at Chrysler's direction. Everything CFC did was fully justified under the terms of its contracts with the Cartalemi dealerships. Furthermore, there is absolutely no evidence that CFC acted with an intent to inflict harm, as opposed to protecting its own interests. The fact that it gave the dealerships ample time to find alternative financing negates any such inference (were it otherwise possible to make one—which it is not).

The Ninth Cause of Action is Dismissed.

### (e) Injunction Against Termination of Credit Facilities By CFC (Tenth Cause of Action)

This claim is moot in light of the fact that the Plaintiffs have made alternative financing arrangements. However, for the same reasons stated by this Court when it denied the motion for a preliminary injunction, there is no basis in law or in fact to enter such an injunction.

## III. CONCLUSION

The motions for summary judgment made by both Defendants are granted and the complaint against them is dismissed in its entirety.

This leaves the claims asserted by CFC in 99 Civ. 2484. The parties are directed to appear for a pre-trial conference on March 3, 2000 at 3:30 p.m.

This constitutes the decision and order of the Court.