**GENERAL AVIATION, INC.,**
**Plaintiff–Appellant,**

v.

**The CESSNA AIRCRAFT CO.,**
**Defendant–Appellee.**

No. 89–1544.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 1, 1990.

Decided Oct. 3, 1990.

Rehearing Denied Nov. 15, 1990.

Michael E. Cavanaugh (argued), Norman W. Hawker, Fraser, Trebilcock, Davis & Foster, Lansing, Mich., for plaintiff-appellant.

Roger M. Clark (argued), Douglas A. Dozeman, Warner, Norcross & Judd, Grand Rapids, Mich., Raymond M. Tierney, Jr., Shanley & Fisher, Morristown, N.J., Walter J. Fleischer, Jr., Shanley & Fisher, Somerville, N.J., for defendant-appellee.

Before MERRITT, Chief Judge; JONES and RYAN, Circuit Judges.

MERRITT, Chief Judge.

This diversity case arises from the nonrenewal of a distributorship agreement between plaintiff General Aviation and defendant Cessna. Plaintiff appeals from District Judge Robert Bell's order granting defendant's motion for summary judgment. *General Aviation, Inc. v. Cessna Aircraft Co.*, 703 F.Supp. 637 (W.D.Mich.1988). For reasons set forth in this opinion we affirm in the main but reverse as to one part.

Defendant Cessna and Plaintiff General Aviation entered into a contract whereby General Aviation, a fixed-base operator, agreed to sell and service Cessna Conquest aircraft. The parties entered into a series of one-year dealer agreements starting in 1977 and continuing through 1984. These agreements were renewable at the parties' option but if neither party took affirmative action to renew the contract, it would terminate automatically.

At the end of the 1984 agreement Cessna intentionally allowed the time for renewal of the contract to pass, thereby terminating its relationship with General Aviation. The reason Cessna gave for nonrenewal was

General Aviation's failure to sell its quota of aircraft during the contract term. General Aviation claims this reason is pretextual and that the real reason behind Cessna's decision was that General Aviation had questioned the quality of Cessna's planes.

The District Court granted summary judgment in favor of Cessna on all claims except for General Aviation's claim that Cessna had been unjustly enriched by failing to repurchase inventory. General Aviation voluntarily dismissed that claim thereby making the District Court's order final under Fed.R.Civ.P. 54(b).

We will first address plaintiff's contract and various miscellaneous claims, on which we affirm the District Court, and then turn to the allegations of violations of the Michigan franchise law, on which we reverse the District Court and remand for further consideration.

## I. Breach of Contract

### A. Promise of Continuing Relationship

■ General Aviation claims that the District Court failed to recognize a distinction between the written contract and the parties' actual relationship. According to General Aviation, even though the contract itself was confined to a one year term, the relationship between the two parties was understood to be a continuing one. Plaintiff points to ¶ B.2(b) of the 1984 agreement in an effort to override the more specific terms of the contract. That provision states: "It is *contemplated* that the relationship between Dealer & Cessna shall be a continuing one." Joint App. at 52 (emphasis added).

While it is true that for several years the relationship between General Aviation and Cessna was a continuing one, the agreements themselves were always for one year only. The fact that the contract states that the parties contemplated that the relationship would continue does not displace the specific provisions of the agreement concerning its duration.

In the last section of the agreement, ¶ E.7, dealing with its duration, the agreement provides that it "shall continue in force until" a certain date (September 30, 1984) "unless sooner terminated as herein provided." Both sides are allowed to ter-

minate the contract by simply not signing a new contract at the end of the annual term. The provision says that General Aviation itself, as a dealer, may simply refuse to renew in which case "it shall be deemed that Cessna's offer has been rejected and Dealer's *relationship* with Cessna as a Dealer shall automatically end." Joint App. at 63 (emphasis added). The agreement also has several provisions allowing Cessna to terminate for cause and two provisions that apparently allow either side to terminate without cause during the term of the agreement:

> ¶ D.2. "Dealer may terminate this Agreement at any time by giving Cessna at least thirty (30) days prior written notice."

> ¶ D.6. "Dealer recognizes certain other conditions may arise under which Cessna may desire to terminate this Agreement. Accordingly, it is agreed that Cessna may terminate this Agreement at any time upon not less than thirty (30) days written notice to Dealer with appropriate notice being given as to such conditions."

As the District Court observed, "while the parties may genuinely have 'contemplated' renewal of the Agreement at the conclusion of its term, they agreed that absent execution of a new Agreement, their *relationship* would 'automatially end.'" *General Aviation*, 703 F.Supp. at 640.

General Aviation argues that the phrase "shall be a continuing one" connotes mandatory action. However, this argument fails when the word "shall" is put in context. As the District Court stated, "a statement of the parties' 'contemplation' that the relationship will be ongoing, cannot reasonably be construed as a 'promise' by either party that the relationship will not be terminated ..." in accordance with the specific terms concerning the duration of the contract. *Id.*

### B. Parol Evidence Rule

■ General Aviation's next contention is that the District Court erred by refusing to consider certain statements made by Cessna to dealers that their relationships

would continue and that it would be treated similarly on the grounds that such consideration would violate the parol evidence rule. General Aviation's basic argument is that the agreement is ambiguous on the issue of whether cause was necessary to terminate the agreement.

We agree with the District Court that the parol evidence rule bars admission of the proferred statements under both the common law and the Uniform Commercial Code (UCC). The agreement itself contains a merger clause in ¶ 8 [1] which serves to integrate the agreement and makes the agreement a final written expression of the parties.

The District Court found that "[o]nly if the language of ¶ B.2.(b) [the phrase concerning the parties' continuing relationship] is given the unnatural and contrived construction urged by General Aviation does any ambiguity appear." *General Aviation*, 703 F.Supp. at 641. Thus, because parol evidence may not be admitted to vary or contradict the terms of a writing, it may not be admitted here to show that the parties intended that their words should not be interpreted to mean what they plainly state.

The UCC dictates the same result for similar reasons. Michigan Compiled Laws Annotated § 440.2202 provides:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence or any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (section 1205) or by course of performance (section 2208); and

(b) by evidence of consistent additional terms unless the court finds the writing

to have been intended also as a complete and exclusive statement of the terms of the agreement.

The UCC precludes admission of the extrinsic statements because, as the District Court says, "the Agreement clearly appears to have been intended as an exclusive and complete statement; and ... the proferred evidence would not merely explain and supplement, but would tend to contradict the written agreement." 703 F.Supp. at 642.

## II.  Breach of Duty of Good Faith

■  General Aviation argues next that Cessna breached its implied duty of good faith by terminating the agreement. The District Court found that the "obligation of good faith cannot be employed, in interpreting a contract, to override express contract terms. *Grand Light & Supply Co., Inc. v. Honeywell, Inc.*, 771 F.2d 672, 679 (2d Cir. 1985); *Cardinal Stone Co., Inc. v. Rival Mfg. Co.*, 669 F.2d 395, 396 (6th Cir.1982); *Corenswet, Inc. v. Amana Refrigeration, Inc.*, 594 F.2d 129, 138 (5th Cir.1979), *cert. denied*, 444 U.S. 938, 100 S.Ct. 288, 62 L.Ed.2d 198 (1979)." *Id.* at 643–44.

*Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934 (6th Cir.1989), supports the District Court's holding that Cessna did not breach the implied duty of good faith. In *Cloverdale* a panel of this Court found that the implied duty of good faith was limited "to situations where one of the parties lacked good faith at the time he or she bargained for the termination right. If properly bargained for, the right is given full effect and may be exercised for any reason." *Cloverdale*, 869 F.2d at 938 (citations omitted).

General Aviation and Cessna both entered into this agreement freely. If General Aviation had wanted specific provisions in the contract concerning what cause would be necessary for termination of the agreement, it could have insisted on the inclusion of those terms. There is no indication that either of the parties acted in

---

1. Paragraph E.8 of the 1984 Agreement provides: "Except as specifically stated herein, all understandings and agreements between the parties relative to Cessna Conquest aircraft products are contained in this Agreement. Upon its effective date, this Agreement cancels all prior Agreements between the parties relative to the sale of such Cessna aircraft products. No subsequent change in or addition to this Agreement shall be valid or binding on either party until reduced to writing ·and signed in accordance with paragraph 9 below."

bad faith "at the time [they] bargained for the termination right." *Id.* In fact, as discussed above, General Aviation itself had a way out of the contract if it so desired. Paragraph E.7 states that General Aviation could have terminated the contract simply by not returning it to Cessna within thirty days. The terms of that section of the contract could not be any clearer, and, because neither party acted in bad faith at the outset of contracting, the implied duty of good faith is inapplicable in this case.

### III. Promissory Estoppel

■ Despite the fact that General Aviation did not state a claim for promissory estoppel in its complaint, it now argues that it is entitled to relief on that theory. The District Court found that even if a claim for promissory estoppel had been timely raised, plaintiff would still not have been able to prevail on that ground.

General Aviation's theory is that Cessna's oral promises to treat it fairly and equally with other dealers caused it to rely to its detriment on those promises. Relying on *Walker v. KFC Corp.,* 728 F.2d 1215 (9th Cir.1984), the District Court found that "where ... the performance which is said to satisfy the detrimental reliance requirement of the promissory estoppel theory is the same performance which represents consideration for the written contract, the doctrine of promissory estoppel is not applicable." *General Aviation,* 703 F.Supp. at 647 n. 10.

In other words, General Aviation agreed to forego its future dealings with Beech Aircraft in order to enter into a written contract which, by its own terms, was a full and complete expression of the parties'

intentions. General Aviation knew exactly what it was getting into because each and every term was spelled out in black and white in the contract. "Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract." *Walker,* 728 F.2d at 1220.

### IV. Violation of Michigan's Motor Vehicle Protection Statute

■ General Aviation next claims that Cessna violated Michigan's Motor Vehicle Protection Statute by terminating it without cause and by failing to give General Aviation notice and an opportunity to cure any deficiency in its performance.[2] Michigan courts have interpreted "motor vehicle" to include those vehicles which can be lawfully operated on a highway and require regulation and registration. *See People v. Smith,* 156 Mich. 173, 120 N.W. 581 (1909) (motorcycles are motor vehicles); *Calladine v. Hyster Co.,* 155 Mich.App. 175, 399 N.W.2d 404 (1986) (forklift not motor vehicle because could not lawfully be driven on a highway); *Woods v. Progressive Mut. Ins. Co.,* 15 Mich.App. 335, 166 N.W.2d 613 (1968) (bulldozers are motor vehicles).

In light of the statutory and case authority on the subject, we affirm the District Court's holding that "aircraft are not motor vehicles within the contemplation of the motor vehicle dealer agreement statute." *General Aviation,* 703 F.Supp. at 648.

### V. District Court's Application of Summary Judgment Standard

A motion for summary judgment requires the District Court to determine

---

**2.** Mich. Comp. Laws § 445.1567 provides in relevant part:

   (1) notwithstanding any agreement, a manufacturer or distributor shall not cancel, terminate, fail to renew, or refuse to continue any dealer agreement with a new motor vehicle dealer unless the manufacturer or distributor has complied with all of the following:
   (a) Satisfied the notice requirement of section 10.
   (b) Acted in good faith.
   (c) Has good cause for the cancellation, termination, nonrenewal, or discontinuance....

"Motor vehicle means that term as defined in section 33 of Act No. 300 of the Public Acts of 1949, being section 257.33 of the Michigan Compiled Laws, but does not include a bus, tractor, or farm equipment." Mich. Comp. Laws § 445.1565(1)

   Mich. Comp. Laws § 257.33 defines motor vehicle as:

   "every vehicle which is self propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails."

whether there is a genuine issue of material fact. The District Court in this case properly stated the standard for summary judgment: "If the moving party carries its burden of 'showing' that there is an absence of evidence to support an adverse claim or defense, then the non-moving party may not simply rely on its pleadings, but must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 [106 S.Ct. 2548, 91 L.Ed.2d 265] (1986)." *General Aviation,* 703 F.Supp. at 639.

The District Court then went on to consider each of General Aviation's claims and found no issues of material fact to exist with respect to the claims reviewed above. We agree. There was no dispute about the terms of the contract. The contract itself stated that Cessna was not under an obligation to renew General Aviation's contract. General Aviation's main argument is based on their interpretation of the "continuing relationship" clause in the contract. The District Court properly interpreted that clause and granted Cessna's motion for summary judgment.

From the record it appears that all these disputed issues before the court were legal and not factual. Therefore the District Court applied the standard enunciated in *Celotex* properly.

## VI. Motion for Recusal

■ General Aviation next appeals the District Court's order denying its motion for recusal. General Aviation filed this motion under 28 U.S.C. §§ 144 and 455(a) and pointed to three facts which it claims warrant relief: first, that one of Cessna's counsel remarked off-handedly "we've got the judge in our pocket;" second, that Cessna's counsel expressed his opinion that the judge would hear Cessna's motion for summary judgment even though it was filed somewhat late; and third, that a magistrate who had formerly been counsel to Cessna was assigned to work with Judge Bell on some cases, but not on this case. These arguments are frivolous.

Under § 144 a judge must recuse himself if one of the parties alleges facts which a reasonable person would believe would indicate a judge has a personal bias against the moving party. *United States v. Story,* 716 F.2d 1088, 1090 (6th Cir.1983). "[C]onclusions, rumors, beliefs, and opinions are not sufficient to form a basis for disqualification." *Hinman v. Rogers,* 831 F.2d 937, 939 (10th Cir.1987) (citation omitted).

The facts relied upon by General Aviation have nothing whatsoever to do with the judge's actions or statements concerning the case. Cessna's counsel's statements are merely opinions and as such are insufficient to support the judge's recusal. *Id.* In addition, the magistrate who was previously counsel to Cessna, though he was assigned to Judge Bell, had nothing at all to do with this particular case. Thus, the District Court properly denied General Aviation's motion for recusal on the basis of § 144 and § 455(a).

## VII. Michigan Franchise Law

### A. The 1974 and 1984 Acts

■ In a brief paragraph in its opinion, the District Court held the Michigan statutes regulating franchise agreements inapplicable because of a statutory exemption for renewals of existing franchises where there is "no interruption" in the franchise business and "no material change in the franchise relationship." Mich. Comp. Laws § 445.1506(1)(e). We now turn our attention to the rather more difficult questions presented by the parties concerning the applicability of these statutory provisions.

Cessna and General Aviation entered into their last contract in the fall of 1983 after the Michigan legislature had passed its 1974 Act regulating franchising agreements but before the legislature amended the Act on June 20, 1984. Cessna argues that the 1974 Act does not apply and contends that the 1984 amendments also do not apply because of the statutory exemption for renewals of existing franchises and because of principles respecting the retroactive application of new statutes. The questions presented are whether the 1974 or the 1984 franchise statutes provide Gen-

eral Aviation any relief for the following claims: (1) false and misleading statements, (2) nonrenewal of the franchise without repurchasing inventory, and (3) refusal to renew the franchise on terms generally available to others.

The purpose of the 1974 Act generally was to require registration of franchise agreements and the issuance of a prospectus prior to the sale of a franchise, to regulate the offer, sale, and purchase of franchises, and to protect franchisees from possible fraudulent practices by franchisors. Cessna did not register or attempt to comply with the provisions of the 1974 Act, apparently relying on an exemption for "the renewal or extension of an existing franchise where there is no interruption in the operation of the franchised business by the franchisee." § 445.1503(3).

The 1974 Act does not by its terms provide for a private right of action by the franchisee. It provides that the Michigan Department of Commerce, the enforcement agency, may "prohibit any registration from becoming effective," § 445.1527, if the franchise agreement contains a provision which:

1. "Permits a franchisor to terminate a franchise prior to the expiration of its term except for good cause...." § 445.1527(e).

2. "Permits a franchisor to refuse to renew a franchise without fairly compensating the franchisee by repurchase or other means for the fair market value at the time of expiration of the franchisee's inventory, supplies, equipment, fixtures, and furnishings...." § 445.1527(f).

3. "Permits the franchisor to refuse to renew a franchise on terms generally available to other franchisees of the same class or type." § 445.1527(g).

The 1974 Act also provides that "[a] person shall not, in connection with the offer, sale, or purchase of any franchise, directly or indirectly ... [e]mploy any device, scheme, or artifice to defraud," § 445.1505(1)(a), or "make any untrue statement of a material fact or ... omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading." § 445.1505(b).

Apparently no concerted effort was made to enforce the 1974 Act, and in 1984 it was amended to make the four statutory prohibitions described above more effective by making any franchise contract provisions in violation thereof "void and unenforceable," § 445.1527, thereby creating private rights of action for their violation.

### B. Retroactivity of the 1984 Act

The Supreme Court of Michigan set out four rules governing the question of when a statute may be applied retroactively in *In re Certified Questions from the United States Court of Appeals for the Sixth Circuit*, 416 Mich. 558, 331 N.W.2d 456, 463 (1982): (1) if the new statute contains specific language which states whether it should be given retroactive or prospective application, then that language should govern; (2) "[a] statute is not regarded as operating retrospectively [solely] because it relates to an antecedent event"; (3) "[a] retrospective law is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already passed"; (4) if a remedial or procedural statute does not destroy a vested right, then it will be given retroactive effect if the injury or claim arose before the statute was enacted.

The 1984 Act has two sections related to its retroactive application:

1. "This act does not impair or affect any act done, offense committed, or right accruing, accrued or acquired ... but the same may be enjoyed, asserted and enforced, as fully and to the same extent as if this act had not been passed." § 445.1546(1).

2. "Franchise documents containing provisions that were lawful before the effective date of this section, which documents contain provisions made void and unenforceable under section 27, shall be valid and enforceable until the first annual filing by the franchisor after the effective date of this section." § 445.1507a(6).

The four above-mentioned substantive statutory prohibitions first listed in the 1974 Act and then repeated in the 1984 Act make any contract provisions in violation thereof legally suspect. Under these circumstances it cannot be said that any contractual provisions in violation of these prohibitions created in Cessna a vested right to have them enforced against the franchisee. Contractual provisions in violation of these four substantive statutory prohibitions cannot be said to be "lawful" within the meaning of § 445.1507a(6) and cannot be said to establish a "right acquired" by Cessna under § 445.1546(1). Cessna did not register or attempt to comply with the 1974 Act, and we are not persuaded that provisions of the contract which may be found by the District Court on remand to be in violation of the four statutory prohibitions constitute "vested rights" which may not be retroactively modified or abridged under Michigan or federal law.[3]

On remand, however, the District Court should first determine and make findings of fact and conclusions of law on the question of whether the exceptions to the Act for "extensions and renewals" of existing franchises applies to exempt the 1984 agreement from the terms of the Act. In order for that exception to apply there may not be a "material change in the franchise relationship." General Aviation claims that Cessna changed without notice a provision of the existing 1982 contract when it presented the new 1983 contract: the provision giving General Aviation the right upon termination to compensation for inventory and supplies which it was required to purchase from Cessna and keep on hand for maintenance and repair of Cessna aircraft. General Aviation also claims that the facts show that Cessna incorrectly advised it that there was no change in the contract provisions from the contract consummated in 1982 to the one consummated in 1983,

statements which General Aviation asserts were known to be false by Cessna.[4] These parts are said to have a value of $276,-306.45. *General Aviation*, 703 F.Supp. at 637. Such a change in the contract, if it occurred, would constitute a "material change" making the exemption for extensions and renewals inapplicable. On remand, the District Court should first determine as a factual matter whether the change in the inventory repurchase provision of the earlier contract was changed in the last contract. If not, it should dismiss the plaintiff's claims under the Michigan franchise statutes. If the provision was changed, it should then reach plaintiff's other claims under the statutes on the merits consistent with this Court's ruling on retroactivity.

Accordingly, the judgment of the District Court on all claims, except plaintiff's Michigan franchise law claims, is affirmed and the case is remanded for further proceedings on statutory claims under the franchise statutes.

## ORDER

Nov. 15, 1990.

Before MERRITT, Chief Judge, and JONES and RYAN, Circuit Judges.

Defendant–Appellant, the Cessna Aircraft Co., has filed an application for rehearing on two grounds: *First*, that § 3(3) of the Michigan Franchise Act, Mich.Comp. Laws § 445.1503(3) applies rather than § 6(e), Mich.Comp.Laws § 445.1506(g). The Court has considered this argument and has concluded that the statute allows for an exemption under the circumstances of this case only where there has been "no material change in the franchise relationship." *Second*, that the provisions of the 1984 amendments to the Michigan Franchise Law may not be given retroactive effect. The Court has fully considered that argument in its previous opinion.

---

3. *See* Sutherland, Statutory Construction § 41.09 (1968) ("statutes are also valid that provide remedies and apply them to past transactions").

4. Cessna's general manager sent a letter to General Aviation's president at the end of the term of the agreement beginning in 1982 and ending in 1983. The letter stated that the next agreement contained "exactly the same information

as contained in the 1983 Agreement." Joint App. at 658. An examination of the two agreements reveals that they were not the same. The earlier agreement requires Cessna to repurchase supplies and inventory from its dealers, Joint App. at 447, while the last agreement makes repurchase discretionary for Cessna. Joint App. at 469.

Accordingly, the application for rehearing is DENIED.