**GENERAL AVIATION, INC.,**
**Plaintiff–Appellant,**

v.

**The CESSNA AIRCRAFT COMPANY,**
**Defendant–Appellee.**

No. 92–2355.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 12, 1993.

Decided Dec. 21, 1993.

Michael E. Cavanaugh (argued and briefed), Mark R. Fox (briefed), Fraser, Trebilcock, Davis & Foster, Lansing, MI, for plaintiff-appellant.

Roger M. Clark (argued and briefed), Douglas A. Dozeman, Warner, Norcross & Judd, Grand Rapids, MI, Raymond M. Tierney, Jr., Shanley & Fisher, Morristown, NJ, for defendant-appellee.

Before: MERRITT, Chief Judge, JONES, Circuit Judge, and ENGEL, Senior Circuit Judge.

MERRITT, Chief Judge.

This diversity action has been before this Court in the past. Plaintiff General Aviation ("GA") brought suit against defendant Cessna Aircraft Company for breach of contract and related claims, as well as for violations of the Michigan Franchise Act. Mich.Comp. Laws § 445.1527, Mich.Stat.Ann. § 19.-854(27). The district court originally granted summary judgment for Cessna on all claims. *General Aviation, Inc. v. Cessna Aircraft Co.*, 703 F.Supp. 637 (W.D.Mich.1988). We affirmed that judgment as to the contract claims and remanded the other issues to the district court for further proceedings in an opinion describing in detail the previous relationship of the parties. *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038 (6th Cir.1990). The parties settled one of the remanded claims and the district court dismissed the others. GA again appeals these dismissals. The primary issue on this appeal is whether § 27(e), the Act's nondiscrimination provision, requires Cessna to have a legitimate reason for refusing to renew GA's franchise agreement while renewing contracts with other, similarly situated franchisees, or whether Cessna may lawfully refuse to renew its franchise agreements at will as long as it offers the same terms to those franchisees it does renew. We hold that the language of the Act requires a legitimate, nondiscriminatory reason for nonrenewal.

## I. Background Information

Beginning in 1977, General Aviation and Cessna entered into a series of one-year franchise agreements, under which GA acted as a dealer to sell and service Cessna aircraft. Each of these agreements was renewable at the parties' option. At the end of the 1984 agreement Cessna decided not to renew the contract, terminating the agreement.

It is no longer a disputed matter that the franchise agreements at issue are covered by the Michigan Franchise Act of 1974 and its 1984 amendments. The panel which heard the original appeal decided that the 1984 amendments could apply retroactively to the contracts at issue here, so long as there had been a "material change" in the last contract. On remand, the district court found that Cessna had materially changed the last contract by eliminating a provision which guaranteed repurchase of GA's inventory by Cessna in the event of contract termination. The retroactive application of the amendments is not at issue in this appeal.

GA makes three claims on this appeal, all of which arise from Cessna's purported violations of the Michigan Franchise Act. First, GA contends that it is entitled to damages for Cessna's failure to comply with the 1974 statute's registration and prospectus disclosure requirements, §§ 6 and 16. Second, GA seeks relief on the basis of Cessna's violation of § 27(e), which restricts a franchisor's ability to refuse to renew franchise contracts. At

oral argument we requested supplemental briefs on analogous provisions in the franchise statutes of other states to assist us in our interpretation of this section. Finally, GA argues that it is entitled to damages because Cessna violated § 5, the anti-fraud provision, by misleading GA with respect to the long-term nature of their business relationship as well as the inventory repurchase provision noted above. We address each claim in turn.

## II. Claims Under §§ 6 and 16

█ In our earlier opinion, we observed that Cessna "did not register or attempt to comply with the 1974 Act." 915 F.2d at 1045. That act provides that:

> A person who offers or sells a franchise in violation of sections 5(1), 6, or 16 is liable to the person purchasing the franchise for damages or recision, with interest at 6% per year from the date of purchase and reasonable attorney fees and court costs.

Mich.Comp.Laws § 445.1531, Mich.Stat.Ann. § 19.854(31). We considered the violations only insofar as they affected retroactive application of the 1984 statute. Under Michigan law, a statute applies retroactively when doing so does not violate a "vested right." We found that, because of the registration violations, Cessna's contractual rights had not vested. 915 F.2d at 1044–45.

The district court correctly noted that when we partially reversed its grant of summary judgment we did not ask it to revisit the § 6 and § 16 claims. J.A. at 141–43. We agree with the district court's analysis of this issue. Although failure to register and issue a prospectus in violation of §§ 6 and 16 may give rise to claims for damages, damages would not be appropriate in this case. That Cessna violated these provisions has been established. 915 F.2d at 1044–45. However, after a six-year business relationship, GA surely possessed all the information it would have received if Cessna initially had issued a prospectus. If Cessna had registered and Michigan had denied the franchise, GA would not have enjoyed several years as one of the leading sellers of Cessna's airplanes. GA does not seek to rescind a contract illegally formed in 1977. Rather, it seeks damages for the profits it would have received had a healthy franchise contract continued after 1984. The injuries caused by non-renewal simply did not flow from these statutory violations.

## III. Claims Under § 27(e)

█ The central controversy in this case surrounds the interpretation of § 27(e) of the Michigan statute, the non-discrimination provision:

> Sec. 27. Each of the following provisions is void and unenforceable if contained in any documents relating to a franchise:
>
> \*    \*    \*    \*    \*    \*
>
> (c) A provision that permits a franchisor to terminate a franchise prior to the expiration of its terms except for good cause. Good cause shall include the failure of the franchisee to comply with any lawful provision of the franchise agreement and to cure such failure after being given written notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to cure such a failure.
>
> (d) a provision that permits a franchisor to refuse to renew a franchise without fairly compensating the franchisee by repurchase or other means for the fair market value at the time of expiration of the franchisee's inventory, supplies, equipment, fixtures, and furnishings....
>
> *(e) a provision that permits the franchisor to refuse to renew a franchise on terms generally available to other franchisees of the same class or type under similar circumstances. This section does not require a renewal provision.*

Whether or not Cessna violated this section when it refused to renew its franchise contract with GA turns on our interpretation of the statute. Cessna argues that since § 27(e) "does not require a renewal provision," renewals themselves are not required at all. The district court agreed. According to this interpretation, the statute places no limits on the company's decision to renew, but merely bars discrimination among franchisees after they are renewed. Unlike part (c), part (e) of this section does not expressly require good cause. Taken as a whole, Cess-

na argues, the only constraint the statute places upon the franchisor's decision of whether or not to offer a renewal is the compensation requirement, § 27(d). Cessna also advances the policy argument that only the demands of the market place should control renewals. Section 27(e) should not be construed as an anti-discrimination requirement with respect to franchise renewals because such a reading would prevent companies from downsizing in response to economic pressures. If the statute were read to require evenhanded renewals, then companies like Cessna would have to abandon all their franchisees at once or none at all.

GA counters that since the statute only protects franchisees that are similarly situated, it permits non-renewal of "bad" franchises. GA Br. at 23. Discrimination among franchisees would not be "unfair" if based on a legitimate reason, which could include the economic hardships of the franchisor. GA Supp.Br. at 12, 19. GA construes § 27(e) as a general antidiscrimination provision regarding renewals. GA argues that since the purpose of the statute is to protect franchisees, it makes no sense to construe this anti-discrimination provision as allowing the ultimate act of discrimination—refusing to renew one franchisee while renewing all other similarly situated franchisees. GA also relies on the section analysis compiled by Michigan's House Committee on Corporations and Finance to support its interpretation. Although the district court noted that the section analysis supports GA's interpretation of § 27(e) and conflicts with Cessna's interpretation, the court refused to consider the document because it determined that the section was unambiguous. The court also found the section analysis somewhat suspect since it was of "unknown date and authorship." We do not find it necessary to base our decision on the House Committee report.

The district court adopted Cessna's interpretation of the statute. The court found that § 27(e) provided "that a franchisor cannot condition its decision to renew on conditions different from those required by other similarly situated franchisees" but held that the section did not require Cessna to continue to do business with GA. Thus it appears that under the district court's interpretation, franchisors may arbitrarily decide to which franchisees they will offer renewals because the evenhandedness requirement applies only after an offer to renew has been made.

We find the district court's interpretation doubtful in light of what appears to be a general anti-discrimination provision with respect to a franchisor's decision of whether or not to renew a contract. The statutory language prohibits "the franchisor to refuse to renew a franchise" on a basis not applicable to "other franchisees of the same class or type." Since this statute has not received the benefit of judicial interpretation prior to this case, we requested counsel to submit supplemental briefs surveying the renewal provisions in analogous federal and state statutes and the parameters of the "good cause" requirements found therein.

While the general purpose of franchise legislation is to protect the rights of franchisees, the degree of protection varies. Some states require good cause when a franchisor fails to renew a contract, while others require compensation at that time. Still others prohibit discrimination, require notice of non-renewal and disclosure of renewal terms. Although no other state's legislation directly parallels Michigan's, an analysis of other laws will aid us in our interpretation of the present statute.

The anti-discrimination clauses of other states' franchise regulations are most apposite to our inquiry. Several states bar a franchisor from discriminating among franchisees. *See e.g.,* Franchise Practices Act, Ark.Stat.Ann. § 4–72–204(a)(2); Franchise Investment Act, Hawaii Rev.Stat. § 482E–6(2)(C) and (H) (requiring renewal absent cause *or* in accordance with the current terms and standards established by the franchisor then equally applicable to all franchisees); Franchise Investment Protection Act, Wash.Rev.Code § 19.100.180(2)(c) and (i) (unlawful to discriminate between franchisees in any business dealing unless reasonable and not arbitrary); Iowa Franchise Act, Iowa Code, Title XIII, § 523H.8 (refusal to renew may not be arbitrary). The plain language of these statutes and the few cases interpreting them indicate that they seek to

govern both a franchisor's decision whether or not to offer a renewal to a franchisee and the terms of the renewal packages offered. *See e.g., Zeigler Co. v. Rexnord, Inc.*, 147 Wis.2d 308, 433 N.W.2d 8, 12 (1988) (section regulates grantor's ability to cancel or fail to renew franchise). In fact, all the renewal regulation provisions surveyed seek to govern the decision whether or not to renew. *See e.g., Witt v. Union Oil Co.*, 99 Cal.App.3d 435, 438, 160 Cal.Rptr. 285 (1979) (section designed to prevent franchisors from arbitrarily refusing to renew).

We find no case in support of Cessna's assertion that § 27(e) seeks only to bar discrimination among renewed franchisees while allowing a franchisor complete freedom in choosing which franchisees to offer renewals. Although the Michigan legislature has employed language which is somewhat different from that of the other states mentioned above, we believe that when it enacted § 27(e) it also proscribed discrimination with respect to a franchisor's decision of whether or not to offer renewals.

Section 27(e) does not directly require good cause. Cessna rightly points out that the differences in the language of § 27(c), which requires good cause for termination, and § 27(e), which does not mention good cause, must have meaning. Cessna could fail to renew *all* its franchisees without cause. However, this does not lead to the conclusion that the compensation requirement of § 27(d) is the lone constraint on a franchisor's decision of whether or not to offer a renewal contract. We note that the compensation provisions cited by both parties in their supplemental briefs are more extensive than Michigan's § 27(d), as they require compensation for the full value of the franchise as a going concern, not merely repurchase of inventory. *See e.g.*, Franchise Disclosure Act, Ill.Rev.Stat., ch. 815, § 705/20; Franchise Law, Minn.Stat. § 80C.14(4); Minn.Admin.Reg., R.2860.4400(B); Franchise Investment Protection Act, Wash.Rev.Code § 19.100.180(2)(i). It seems plain to us that § 27 broadly proscribes discrimination among similarly situated franchisees with respect to renewal offers, in addition to requiring the payment of compensation.

Based on the language of the statute taken as a whole and considered in the context of similar statutes, we interpret § 27(e) to require Cessna to renew its franchise with GA in accord with the renewal terms Cessna offered to other, similarly situated franchisees. We do not read § 27(e) to require cause for failure to renew *per se*, but only for differential treatment.

■ Cessna argues that even if § 27(e) is interpreted to prohibit discriminatory refusals to renew, it does not apply in this case because there is no renewal provision in the GA franchise agreement and the section "does not require a renewal provision." GA contends that § 7 of the 1984 Dealer Agreement constitutes a renewal clause for the purposes of invoking § 27(e):

> Unless Cessna has notified Dealer of its intention not to renew this Agreement, Cessna will offer Dealer prior to September 1, 1984 a Cessna Conquest Sales and Service Agreement for the succeeding Agreement year, provided this Agreement has not been terminated or notice has not been mailed prior to such date.

Cessna contends that this is not a renewal provision but merely a notice provision which describes the procedure to be followed in case either party desires to offer or accept a renewal. Cessna asserts that "[t]he previous decision of this court dictates that the 1984 agreement *not* be deemed a renewal." Cessna letter to Court Clerk, Sept. 20, 1993. The determination by this Court that a material change in Cessna's franchise agreement with GA rendered the statutory exemption for renewals inapplicable is not tantamount to a finding that no renewal provision existed in the 1984 contract or that the 1984 contract itself was not a renewal. On the contrary, parties often contemplate that the specific provisions of a franchise agreement may change. *See e.g., Dufresne's Auto Service, Inc. v. Shell Oil Co.*, 992 F.2d 920, 926 (9th Cir.1993). We construe § 7 of the Dealer Agreement to be a renewal provision. We need not determine whether the last sentence of § 27(e) requires a renewal provision in the franchise agreement in order for the anti-discrimination provision to apply, or whether it does not require parties to include

a renewal provision in their contracts and the anti-discrimination provision applies only if they do.

Accordingly, the cases Cessna relies upon are not persuasive. The Virginia statute at issue in *Betsy–Len Motor Hotel Corp. v. Holiday Inns, Inc.,* 238 Va. 489, 385 S.E.2d 559 (1989) merely requires disclosure of renewal terms; the good cause requirement applies only to termination. *Witt v. Union Oil Co.,* 99 Cal.App.3d 435, 160 Cal.Rptr. 285 (1979) concerned retroactive application of a statute to a lease that did not contain a renewal clause. *Wright–Moore Corp. v. Ricoh Corp.,* 980 F.2d 432 (7th Cir.1992) similarly dealt with a contract that contained no renewal provision. *Cloverdale Equip. Co. v. Simon Aerials Inc.,* 869 F.2d 934 (6th Cir. 1989) is not a franchise case. In none of these cases did the court find discrimination on the part of the franchisor. At most, Cessna demonstrates that other states' franchise statutes which regulate renewals do not require courts to impose a renewal provision where none exists. Cessna has garnered no support for the contention that when a franchise agreement contains a renewal provision and the governing law prohibits discrimination a franchisor may refuse to renew the agreement at will.

Finally, we address Cessna's contention that our reading of this provision will unfairly constrain the ability of companies to deal with economic downturns. Clearly, it is the intent of the Michigan legislature to offer a modicum of protection to franchisees. Our review of similar statutes indicates that this type of regulation is enacted as result of concern

> ... that once a business has made substantial franchise-specific investments it loses all or virtually all of its original bargaining power regarding continuation of the franchise. Specifically, the franchise cannot do anything that risks termination, because that would result in a loss of much or all of the value of its franchise-related investments.

*Instructional Sys., Inc. v. Computer Curriculum Corp.,* 826 F.Supp. 831, 838 (D.N.J. 1993) (citation omitted). But the legislature did not "intend to impose an eternal and unqualified duty of self-sacrifice upon every grantor that enters into a distributor-dealership agreement" or to "insulate dealers from all economic reality at the expense of grantors." *Zeigler,* 433 N.W.2d at 11, 12. A franchisor in Michigan may still deal effectively with economic hardship. It may change the terms of all its franchise agreements or terminate those franchises which are distinguishable. A franchisor may not unfairly discriminate between similarly situated franchisees when offering renewal contracts.

■ Pursuant to our analysis of § 27(e), Cessna could refuse to renew GA's contract if the circumstances of its relationship with GA were not similar to those of its relationships with other dealers: in other words, if it had a legitimate reason to treat GA differently. We reverse the holding of the district court on this issue and remand with instructions to the court to determine whether such a reason existed. We reiterate that Cessna's justification must evince a specific basis for failing to renew the GA contract and not merely support the contention that Cessna needed to cut back on the size of its operation by eliminating this one dealer without any change in its policies regarding other dealers.

### IV.  Section 5 Claims

■ GA's argument that Cessna violated § 5, which prohibits fraudulent acts and statements in franchise contracts, is twofold. First, GA asserts that Cessna misled GA's representatives by stating that dealers would be treated equally and that the parties' relationship would be a long-term one. This is basically a contractual fraud claim. As the district court found, this argument simply rehashes the breach of contract claim that we have already dismissed. *See* 915 F.2d at 1040–42; J.A. at 146.

GA's second § 5 claim is that Cessna misled GA when it deleted the inventory repurchase requirement from the last contract while indicating that no changes had been made. We agree with the district court's determination that this claim, if there were any damages still available, should go to trial, and even Cessna so concedes. Cessna Br. at 18. Cessna correctly points out, however,

that damages for such a § 5 violation would be identical to the damages that GA has already received for Cessna's § 27(d) violation, which requires compensation in the event of non-renewal and which the parties have settled. Section 5 awards damages for the repurchase of inventory plus interest, which Cessna has already paid. The only distinction is that § 5 also allows recovery for reasonable attorneys fees. We therefore find no fault with the district court's decision to proceed on the attorney's fees issue pending the outcome of this appeal.

Accordingly, the judgment of the District Court is affirmed on all claims other than the § 27(e) claim. On the § 27(e) claim, the judgment below is reversed and the case remanded for trial on the merits in accordance with the interpretation of the statute in this opinion and such other proceedings as may be necessary to complete the case.