In re NICOLE ENERGY SERVICES,
INC., Debtor.

In re Nicole Energy Marketing,
Inc., Debtor.

In re Nicole Gas Marketing,
Inc., Debtor.

In re Nicole Gas Production
Ltd, Debtor.

Nos. 03–67484, 09–52884,
09–52885, 09–52887.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division
at Columbus.

Feb. 25, 2010.

842

Grady L. Pettigrew, Jr., Law Office of Grady L. Pettigrew, Jr., Eleanor Beavers Haynes, Columbus, OH, Robert C. Sanders, Upper Marlboro, MD, for Debtors.

Nicole Energy Marketing Inc., pro se.

Nicole Gas Marketing Inc., pro se.

Nicole Gas Production Ltd., pro se.

## MEMORANDUM OPINION ON MOTIONS TO DISQUALIFY JUDGE

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

These matters are before the Court on identical motions to disqualify Judge John E. Hoffman, Jr. ("Disqualification Motions") filed by Freddie L. Fulson ("Fulson"),[1] and the responses in opposition to the Disqualification Motions filed by Larry J. McClatchey, Trustee,[2] and Frederick L. Ransier, Trustee.[3]

### I. Jurisdiction

The Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2).

### II. Background

Fulson identifies himself as a party in interest in each of the cases by virtue of his various roles as principal, sole director, sole shareholder, CEO, general partner and/or former officer of the Nicole Entities. Fulson has been active in each case, filing pleadings on behalf of himself, but also purportedly on behalf of the corporate Debtors. Fulson is not an attorney. Six attorneys have entered notices of appearance at various times in the Nicole Energy Services, Inc. ("NES") case on behalf of the Nicole Entities, but no attorney has

---

**1.** The Disqualification Motions are: Doc. 581 in the Nicole Energy Services, Inc. case; Doc. 36 in the Nicole Energy Marketing, Inc. case; Doc. 39 in the Nicole Gas Marketing, Inc. case; and Doc. 38 in the Nicole Gas Production LTD case. The debtors in these cases will be referred to collectively as the "Nicole Entities" or "Debtors."

**2.** Larry J. McClatchey ("McClatchey") is the Chapter 11 Trustee in the case of Nicole Energy Services, Inc. His response in opposition

to the Disqualification Motions, filed October 23, 2009, is Doc. 583 in that case.

**3.** Frederick L. Ransier ("Ransier") is the Chapter 7 Trustee in the cases of Nicole Energy Marketing, Inc., Nicole Gas Marketing, Inc., and Nicole Gas Production LTD. His responses in opposition to the Disqualification Motions are Docs. 38, 41 and 40 in those respective cases. Each of the responses was filed November 3, 2009.

actively represented NES since April 2008, and no attorney has made an appearance on behalf of any of the Nicole Entities in the Chapter 7 cases.

The NES case began as an involuntary Chapter 7 case filed by petitioning creditors Columbia Gas of Ohio, Inc.; Columbia Gas of Kentucky, Inc.; Columbia Gas of Pennsylvania, Inc.; and Columbia Gas Transmission Corporation (collectively, "Columbia Entities") on the eve of a state court trial in which NES asserted third-party claims for breach of contract and negligence against the Columbia Entities. Thereafter, NES filed a voluntary Chapter 11 petition and moved to dismiss the Chapter 7 case. The Court determined that the case should proceed under Chapter 11, but that the appropriate filing date was the date the involuntary petition was filed. *See* Case No. 03–67484, Doc. 66. On April 26, 2004, the Columbia Entities moved for the appointment of a Chapter 11 trustee, or in the alternative, for conversion of the case to a case under Chapter 7. On August 18, 2004, the Columbia Entities, Duquesne Light Company[4] and NES agreed to the appointment of a Chapter 11 trustee. *See* Case No. 03–67484, Doc. 155. McClatchey was appointed as NES's Chapter 11 trustee by order entered October 8, 2004. *See* Case No. 03–67484, Doc. 162.

On November 14, 2005, McClatchey filed an adversary complaint against Fulson; Nicole Energy Marketing, Inc. ("NEM"); Nicole Gas Marketing, Inc. ("NGM"); Nicole Gas Production, Ltd. ("NGP"); Synaversa Energy Services, Inc.; Synaversa, Ltd.; and Seaburyson Properties, Ltd. (collectively, "Fulson Entities"). The complaint sought substantive consolidation of the assets and liabilities of the Fulson Entities with NES, an accounting, and an order avoiding and recovering certain alleged fraudulent and preferential transfers between NES and one or more of the defendants, or in the alternative, a money judgment. *See* Adv. Pro. No. 05–2602, Doc. 1. The Fulson Entities moved for withdrawal of the reference on February 23, 2006. The motion was denied by the District Court. *See* Adv. Pro. No. 05–2602, Doc. 27. Prosecution of the adversary proceeding against NEM, NGM, and NGP is now stayed by their intervening Chapter 7 bankruptcy cases. While prosecution as to Fulson; Synaversa Energy Services, Inc.; Synaversa Ltd. and Seaburyson Properties, Ltd. is not stayed, the nature of the relief sought makes it impractical to proceed against fewer than all defendants, and no action has been taken in connection with the adversary proceeding since 2008.

On July 15, 2005, following protracted litigation, the Court remanded NES's and NEM's breach-of-contract and negligence claims asserted against one or more of the Columbia Entities to state court. *See* Case No. 03–67484, Doc. 222. In October 2006, McClatchey entered into an asset purchase agreement ("APA") that provided for the sale of the bankruptcy estate's interest in the claims asserted in the state court litigation against certain Columbia Entities and sought competing bids. *See* Case No. 03–67484, Docs. 286 and 356. No competing bids were submitted, but Fulson and other Nicole Entities filed objections to the sale, and a three-day hearing on McClatchey's motion for approval of the APA was conducted in May 2007. Following post-hearing briefing, the Court issued a lengthy memorandum opinion approving the sale ("Sale Opinion"). *See* Case No. 03–67484, Doc. 453. The Court's order

---

4. On May 6, 2004, Duquesne Light Company joined in the motion for appointment of a trustee. *See* Case No. 03–67484, Doc. 104.

approving the sale was upheld on appeal. McClatchey sought to distribute the sale proceeds by way of motion, but Fulson objected to that approach, and the Court ruled that McClatchey could not distribute the proceeds without either obtaining confirmation of a Chapter 11 liquidating plan or converting the NES case to Chapter 7. *Dep't of Taxation v. Swallen's, Inc. (In re Swallen's, Inc.)*, 269 B.R. 634, 639 (6th Cir. BAP 2001) ("We simply cannot find a basis in the Bankruptcy Code for permitting, *over objections by interested parties*, a distribution to creditors of all the assets in a Chapter 11 case absent a confirmed Chapter 11 plan." (emphasis added)). McClatchey then filed a liquidating plan. That plan was confirmed by this Court on September 9, 2009, *see* Case No. 03–67484, Doc. 576, following a hearing at which Fulson was permitted to cross-examine McClatchey.[5] *See* Case No. 03–67484, Pro. Memo September 4, 2009.

The three Chapter 7 cases involving the Nicole Entities were initiated by the filing of involuntary petitions on March 23, 2009. No answers were filed to any of the petitions,[6] and the Court entered orders for relief in each case on May 4, 2009.

### III. The Disqualification Motions

The Disqualification Motions outline a number of perceived violations of Fulson's and the Nicole Entities' rights based on various rulings in each of the Nicole cases, the approval of the APA and the confirmation of NES's liquidating plan. Fulson alleges that the rulings were based upon fraud and perjury ignored by the judge because "the judge is a hater of Black people," Disqualification Motions at 6–7,

and because the judge is "bias [sic] and prejudice [sic] against Pro Se litigants, against Black pro se litigants, or against Plaintiff Freddie L. Fulson personally." *Id.* at 2.

### IV. Legal Analysis

Federal Rule of Bankruptcy Procedure 5004(a) governs disqualification of a bankruptcy judge. The rule provides:

(a) DISQUALIFICATION OF JUDGE. A bankruptcy judge shall be governed by 28 U.S.C. § 455 ["Judicial Code"], and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case.

Fed. R. Bankr.P. 5004(a). The Judicial Code states, in relevant part, that:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

28 U.S.C. § 455.

■ Recusal on the basis of partiality generally arises in one of two circumstances: (1) when a judge forms an opinion of the litigant based upon information learned outside the course of judicial proceedings ("Extrajudicial Source Doctrine"), or (2) when a judge who obtains informa-

---

**5.** The Court limited the scope of Fulson's cross-examination and the scope of the hearing on plan confirmation after Fulson attempted to again raise issues that had been disposed of by way of the Sale Opinion.

**6.** Fulson filed motions to dismiss each of the involuntary petitions, but the motions were stricken because Fulson, as a non-lawyer, was not entitled to respond, pro se, to the involuntary petitions on behalf of the corporate debtors. *See* Local Bankruptcy Rule ("LBR") 1074–1(a) and 9011–2(b).

tion only during the course of judicial proceedings forms a favorable or unfavorable opinion so extreme that fair judgment appears impossible ("Pervasive Bias Exception"). *See generally* 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2922 (2d ed.1995). In *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), the Supreme Court explained:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. See *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks made during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have

been made by the District Judge in *Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.,* at 28, 41 S.Ct. 230 (internal quotation marks omitted). *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Id.* at 555–56, 114 S.Ct. 1147.

■■■ The standard for determining whether a judge should be disqualified is an objective one: whether a reasonable person with knowledge of all facts would conclude that the judge's impartiality might reasonably be questioned. *See Lopez v. Behles (In re Am. Ready Mix, Inc.),* 14 F.3d 1497, 1501 (10th Cir.1994); *Hinman v. Rogers,* 831 F.2d 937, 939 (10th Cir.1987); *United States v. Story,* 716 F.2d 1088, 1090 (6th Cir.1983).

> The proper test ... is whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man.

*United States v. Cowden,* 545 F.2d 257, 265 (1st Cir.1976). As the Sixth Circuit explained, "[t]he standard is an objective

one; hence, the judge need not recuse himself based on the 'subjective view of a party' no matter how strongly that view is held." *United States v. Sammons,* 918 F.2d 592, 599 (6th Cir.1990) (quoting *Browning v. Foltz,* 837 F.2d 276, 279 (6th Cir.1988)). The Seventh Circuit has elaborated on the necessity and desirability of this objective recusal test:

> An objective standard is essential when the question is how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person.... Trivial risks are endemic, and if they were enough to require disqualification we would have a system of preemptory strikes and judge-shopping, which itself would imperil the perceived ability of the judicial system to decide cases without regard to persons. A thoughtful observer understands that putting disqualification in the hands of a party, whose real fear may be that the judge will apply rather than disregard the law, could introduce a bias into adjudication. Thus the search is for a risk substantially out of the ordinary.

*Hook v. McDade,* 89 F.3d 350, 354 (7th Cir.1996) (quoting *In re Mason,* 916 F.2d 384, 386 (7th Cir.1990)).

The inquiry under § 455(a) is whether a reasonable person knowing all the relevant facts would question the judge's impartiality. *Reed v. Rhodes,* 179 F.3d 453, 467 (6th Cir.1999). The question under § 455(b)(1) is whether the judge holds a personal bias or prejudice against the movant. The movant must allege "facts which a reasonable person would believe would indicate a judge has a personal bias.... Conclusions, rumors, beliefs, and opinions are not sufficient to form a basis for disqualification." *Gen. Aviation, Inc. v. Cessna Aircraft Co.,* 915 F.2d 1038, 1043 (6th Cir.1990) (internal citation and quotation marks omitted).

The Disqualification Motions set forth no facts and describe no acts that, on any objective basis, would reflect a personal bias on the part of the Court, or lead a reasonable person to call into question the Court's impartiality. The matters alleged to constitute bias stem from legal rulings made by the Court during the course of the NES case. At the outset, the Court notes that every allegation in the "Affidavit of Bias and Prejudices" attached to each Disqualification Motion sets forth a perceived violation of the "Debtor's" rights,[7] and a number of these perceived violations are addressed below. To the extent Fulson believes the Court has demonstrated a personal animosity toward Fulson, neither the Disqualification Motions nor their accompanying affidavits contain any such allegations nor any examples of personal attacks against Fulson, discrimination against African–Americans or pro se parties, or actions or statements reflecting animosity toward African–Americans or pro se parties.

One example of the Court's alleged bias offered by Fulson is its handling of the issue of whether or not an official committee of unsecured creditors was constituted and functioning in the NES case. Fulson's position is that there never was such a committee, and to recognize its existence was tantamount to fraud. Disqualification

---

7. As noted on multiple occasions during the conduct of the Nicole Entities' cases, the Debtors are separate corporate entities and are not one and the same with Freddie Fulson. As separate corporate entities, the Debtors are required to be represented in this Court by an attorney. *See* LBR 1074–1(a) and 9011–2(b). Fulson is not an attorney, nor does he have authority to file pleadings requesting relief, or asserting rights, on behalf of the corporate entities.

Motions at 6. This issue was laid to rest during the hearing in May 2007 at which representatives of the creditors' committee, including Enron's representative, testified, and the Court found, that there was in fact a functioning committee in the NES case. The order approving the sale and APA was appealed by Fulson, and one of the issues on appeal was whether there was a creditors' committee in place during the pendency of the NES case. Fulson's appeal was unsuccessful.

Fulson also argues strenuously that the Court demonstrated bias by failing to immediately remand to state court NES's breach-of-contract and negligence claims against the Columbia Entities when NES's involuntary petition was filed. Disqualification Motions at 5. Contrary to Fulson's suggestion, the NES breach-of-contract and negligence claims against the Columbia Entities *were* remanded to the state court, albeit not on the timetable desired by Fulson. After remand and prior to the commencement of the state court trial, McClatchey and the Columbia Entities reached a resolution of the claims by entering into the APA. A motion to approve the APA was served on all creditors and was approved following a three-day hearing during which the Court permitted Fulson to examine witnesses and make arguments, despite the fact that Fulson failed to file a claim in the NES case and thus was not a creditor, and despite the fact that as a non-lawyer, he had no ability to assert legal positions on behalf of a corporation.

The Disqualification Motions state that the approval of the APA for $3.7 million, when Fulson believed the claims were worth $60 million, was the result of "fraud and collusion." Disqualification Motions at 6. Fulson does not support his contention that the Court's ultimate approval of the settlement and APA resulted from bias and prejudice on its part. He simply makes this bare assertion without offering any supporting evidence. In fact, the settlement was the product of negotiation-a common practice in Chapter 11 cases, where practicality and the need for timely resolution frequently outweigh the perceived benefits of litigation. The fact that compromise—rather than litigation—often benefits creditors of a Chapter 11 debtor's bankruptcy estate was amply demonstrated in the NES case by the outpouring of support for the settlement and approval of the APA by both the committee and individual unsecured creditors of NES.

Fulson also asserts that prejudice was shown when the Court denied Fulson's motion for stay pending appeal, because "if he was impartial in this case, he would have allowed the stay pending the appeal." Disqualification Motions at 5. The legal standard for granting a stay pending appeal is the same as that required for injunctive relief. Fulson did not meet the legal burden; neither his race nor his pro se status had any bearing on the Court's ruling on the motion. *See* Case No. 03–67484, Doc. 475.

■ Finally, Fulson argues that the Court "must give advice to a non-represented litigant" and "must inform the non-represented Debtor at every stage of the proceedings of the Debtor's rights, whether Federal, State, or local, in a timely manner and in a manner that the Debtor can understand." Disqualification Motions at 14–15. Fulson is mistaken, and again conflates his personal interests with those of the corporate interests of the Nicole Entities. The Court is not permitted to give legal advice to any party, represented or not. The Court notes that NES was represented by counsel for several years, and had representation throughout (and after) the three-day hearing on McClatchey's motion seeking approval of the

APA. The other three Nicole Entities do not have counsel, but each has a Chapter 7 trustee who represents its interests.

Fulson is understandably frustrated and angry over the demise of the companies he founded, as anyone would be who has devoted a substantial measure of his energies over several years to an ultimately unsuccessful venture. But the financial demise of Fulson's companies was not a consequence of judicial bias or prejudice. Nor did it result from any fault of, or misconduct by, McClatchey. Indeed, McClatchey has ably served the interests of the creditors of NES's estate—all the while deflecting multiple attacks on his character and integrity by Fulson.

Experience has shown that in many, if not most, Chapter 11 cases involving closely-held corporations, the principals and shareholders are distressed to lose some measure of control of their companies as part of the bankruptcy process. When a trustee is appointed to displace incumbent management, the loss of control is complete. Yet court supervision—and the inevitable loss of autonomy that comes with it—is the price a business entity must pay to obtain bankruptcy protection and gain access to the array of rehabilitative tools afforded by the Bankruptcy Code. Unhappiness with the economic and legal realities of a bankruptcy proceeding, however, does not establish bias and prejudice on the part of the Court. While NES came into this Court as an involuntary debtor, it subsequently filed its own voluntary Chapter 11 petition. It later agreed to the appointment of a Chapter 11 trustee. These actions were taken while it was represented by counsel. Moreover, NEM, NGM and NGP failed to properly contest the involuntary petitions. In sum, Fulson's deep dissatisfaction with the outcome of these proceedings is not sufficient to show bias or prejudice on the Court's part.

Because Fulson has not made the showing necessary to establish a basis for disqualification under 28 U.S.C. § 455, the Motions are **DENIED**. The Court will enter a separate order in accordance with this memorandum opinion.

**IT IS SO ORDERED.**