# STATE OF MICHIGAN

# COURT OF APPEALS

PTN-NRS, LLC,

        Plaintiff-Appellant,

v

COUNTY OF WAYNE,

        Defendant-Appellee.

UNPUBLISHED
October 5, 2017

No. 332135
Wayne Circuit Court
LC No. 13-012537-CK

Before: SAAD, P.J., and SERVITTO and GADOLA, JJ.

GADOLA, J. (*dissenting*).

Plaintiff appeals as of right the final order of the trial court granting defendant summary disposition pursuant to MCR 2.116(C)(7) and (10), and dismissing plaintiff's amended complaint. Plaintiff also challenges the earlier order of the trial court granting defendant summary disposition pursuant to MCR 2.116(C)(8) of the claim raised in plaintiff's original complaint. The majority opinion concludes that the trial court erroneously granted defendant summary disposition pursuant to MCR 2.116(C)(8) and (10). I disagree, and would hold that the trial court correctly granted summary disposition of plaintiff's claims. I therefore respectfully dissent.

## I. FACTS

This case involves an agreement executed by the parties in November 2009. As stated in the agreement, the purpose of the agreement was for plaintiff to take action "to increase [defendant's] revenues through advertising, sponsorship opportunities and/or granting naming right[s] to interested parties . . . ." The agreement provides in paragraph 3.01, in relevant part:

> [Defendant] hereby grants to [plaintiff] and [plaintiff] hereby accepts the exclusive right and obligation to perform the following work . . . on behalf of [defendant]: (1) identifying, soliciting, pursuing, and developing opportunities for [defendant] to earn additional revenues through, corporate or other commercial sponsorship, naming rights, and/or similar advertising and promotional transactions ("Revenue Opportunities"), (2) presenting to [defendant] for its consideration and review, proposed Revenue Opportunities, and proposed contract terms under which the Revenue Opportunities may be obtained, and (3) for such Revenue Opportunity contracts as [defendant] may approve and sign

-1-

("Revenue Contracts,"), overseeing all necessary implementation of [defendant's] obligations under such contracts. . . . [Plaintiff] agrees and understands that each Revenue Contract will be submitted to the Wayne County Commission from the Wayne County Executive for approval, prior to execution by the Wayne County Executive. . . .

In addition, paragraph 5.01 of the agreement provides, in relevant part:

> Upon the request of [plaintiff] . . . [defendant] must furnish copies of all information, data, reports, records, etc., that [defendant] and [plaintiff] believe are necessary for [plaintiff] to provide the Work contemplated by this Agreement.

Pursuant to the agreement, plaintiff was entitled to receive 25% of the revenues generated from each approved revenue contract as compensation for its work. That is, plaintiff would only receive payment under the agreement if defendant accepted a proposed revenue contract submitted by plaintiff and the implemented revenue contract thereafter generated revenue. The agreement explicitly states in paragraph 8.01 that the 25% of the revenue generated by approved revenue contracts is the "full compensation" to which plaintiff is entitled and, in paragraph 8.02, that "[Plaintiff] is not entitled to any costs incurred in carrying out the Work."

No provision of the agreement obligates defendant to accept any proposed revenue contract submitted by plaintiff; under the agreement, defendant had sole discretion to reject any and all revenue contracts proposed by plaintiff. The parties' agreement also specifies in paragraphs 16.01 and 16.02 that the remedy available to each party, if the other party should breach the agreement, is termination of the agreement.

In its original complaint before the trial court, plaintiff alleged that defendant had breached the parties' agreement by failing to accept the revenue opportunities plaintiff had presented. Plaintiff alleged that it had provided defendant "with numerous opportunities for new revenue sources" in accordance with the parties' agreement but that defendant "refused and/or failed to complete its obligations and abide by" the agreement. The original complaint specifically identified one proposal plaintiff had submitted to defendant involving a "pouring rights agreement" with Coca-Cola, and alleged that defendant had "refused to put the terms of the Primary Agreement into effect." Plaintiff alleged that this refusal to execute the pouring rights agreement with Coca-Cola caused plaintiff to lose the percentage of the revenue that defendant would have received had defendant accepted the Coca-Cola proposal (and, presumably, had that accepted proposal thereafter produced revenue). Plaintiff also alleged that defendant breached the initial agreement by failing to provide plaintiff with information and support needed to implement the Coca-Cola proposal, thereby hindering plaintiff's ability to put the Coca-Cola proposal into effect.

Defendant moved for summary disposition of plaintiff's complaint pursuant to MCR 2.116(C)(8), contending that plaintiff had failed to state a claim because the agreement between the parties did not require defendant to accept any proposed revenue opportunity presented to it by plaintiff. Defendant argued that the agreement provided plaintiff only with the exclusive right to present proposed revenue opportunities, that plaintiff's right to compensation was conditioned upon defendant's approval of a revenue contract and the generation of profit from the execution

of such a revenue contract, and that defendant had sole discretion to accept or deny any such proposal.

In response to the motion, plaintiff argued that while the initial agreement did not require defendant to accept any revenue opportunity presented by plaintiff, defendant had a duty of honesty and good faith with respect to its discretion in the performance of the contract. Plaintiff argued that defendant's officials and employees had acted to further their own personal interests and/or with personal animosity toward plaintiff when considering and reviewing the proposed revenue opportunities, resulting in defendant breaching the primary agreement by failing to act in good faith, and the revenue opportunities being lost.

At the hearing on the motion before the trial court, defendant argued that plaintiff's complaint included no allegations of bad faith and unfair dealing, and that plaintiff had failed to state a claim for breach of the primary agreement. Plaintiff asserted that through discovery it could obtain evidence that defendant acted in bad faith in blocking the progress of the proposed revenue opportunities, and sought to amend the complaint to add specific allegations of bad faith. The trial court granted defendant's motion with regard to the allegations of the original complaint, specifically those allegations arising out of the Coca-Cola proposal, but permitted plaintiff to file an amended complaint to allege breach of contract, fraud, and misrepresentation arising out of any proposed revenue opportunity other than the Coca-Cola proposal.

Plaintiff thereafter filed its amended complaint, alleging breach of contract, promissory estoppel, and fraudulent misrepresentation. Specifically, plaintiff alleged in the amended complaint that pursuant to the agreement plaintiff had provided defendant with "numerous opportunities for new revenue sources" including, but not limited to: "the I-94 beautification project, the LED lighting project, the LED network project, the 511 Woodward LED project," as well as the Coca-Cola proposal that the trial court had earlier ruled upon. Plaintiff alleged that defendant had breached the initial agreement when it failed to provide plaintiff with "the information and support needed for various revenue opportunities" and that this failure was a bad faith refusal and/or failure by defendant to abide by the agreement causing defendant "huge revenues and savings cost opportunities" and "causing Plaintiff to incur unreimbursed time and unreimbursed expenses."

Defendant moved for summary disposition of plaintiff's allegations of fraudulent misrepresentation pursuant to MCR 2.116(C)(7) arguing that the claim was barred by governmental immunity, and moved for summary disposition of plaintiff's breach of contract claim pursuant to MCR 2.116 (C)(10), arguing that there was no dispute of material fact and that defendant was entitled to judgment as a matter of law. The trial court granted defendant's motion regarding the claim of fraudulent misrepresentation pursuant to MCR 2.116(C)(7) and of the breach of contract and promissory estoppel claims pursuant to MCR 2.116(C)(10).

On appeal to this Court, plaintiff challenges the trial court's orders granting summary disposition pursuant to MCR 2.116(C)(8) and (10).[1] Plaintiff contends that the trial court erred when it granted summary disposition of the original complaint pursuant to MCR 2.116(C)(8) of the claim of breach of contract related to the Coca-Cola proposal, and further erred in granting summary disposition pursuant to MCR 2.116(C)(10) of plaintiff's breach of contract claim in the amended complaint.

## II. THE ORIGINAL COMPLAINT

The majority opinion first concludes that the trial court erred in granting defendant summary disposition of plaintiff's original complaint which alleged that defendant breached the contract by not accepting the Coca-Cola revenue proposal and by failing to provide plaintiff with information and support regarding the Coca-Cola revenue proposal. The majority opinion concludes that the original complaint set forth allegations of breach of contract sufficient to survive a motion for summary disposition pursuant to MCR 2.116(C)(8). I disagree.

This Court reviews de novo the grant or denial of summary disposition. *Graham v Foster*, 500 Mich 23, 28; 893 NW2d 319 (2017). We also review de novo the interpretation of a contractual agreement. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). A motion for summary disposition pursuant to MCR 2.116(C)(8) tests the legal sufficiency of the complaint, and is considered on the pleadings alone.[2] *Bryan v JPMorgan Chase Bank*, 304 Mich App 708, 713; 848 NW2d 482 (2014). If no facts can be developed to sustain the claim, the motion must be granted. *Id.*

To adequately allege a breach of contract, the party asserting the breach must establish by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach. *Miller-Davis Co v Ahrens Construction, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). The alleged breach by the defendant must be the proximate cause of the plaintiff's harm. *Chelsea Investment Group LLC v City of Chelsea*, 288 Mich App 239, 254; 792 NW2d 781 (2010).

In this case, plaintiff's original complaint did not adequately allege either breach or damages. The parties' agreement grants plaintiff the exclusive right (1) to identify, solicit, pursue and develop revenue opportunities; (2) to present proposed revenue opportunities to defendant for its consideration and review; and (3) of oversight of all necessary implementation of defendant's obligations under an executed revenue contract. The agreement requires defendant, upon plaintiff's request, to provide plaintiff with "all information, data, reports, records, etc.," that the parties believe is necessary for plaintiff to provide the work covered by

---

[1] Plaintiff does not pursue on appeal its arguments regarding promissory estoppel or fraudulent misrepresentation.

[2] Plaintiff attached the initial agreement to the complaint, thereby incorporating the agreement into the pleadings. See *Laurel Woods Apts v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007).

the preliminary agreement. The agreement imposes no other duty upon defendant. The agreement makes clear that each proposed revenue opportunity must be submitted to defendant for approval, and gives defendant complete discretion to approve or reject any revenue opportunity presented to it by plaintiff. The agreement further provides that the remedy available to either party, upon breach of the agreement by the other party, is termination of the agreement.

We interpret a contractual agreement according to its plain and ordinary meaning. *Wells Fargo Bank, NA v Cherryland Mall Ltd Partnership (On Remand)*, 300 Mich App 361, 386; 835 NW2d 593 (2013). Because an unambiguous contract reflects the parties' intent as a matter of law, courts must interpret and enforce a contract as written. *In re Egbert R. Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). An agreement is unambiguous when it "fairly allows but one interpretation." See *Morley v Auto Club of Mich*, 458 Mich 459, 465; 581 NW2d 237 (1998).

In this case, plaintiff's original complaint alleged that defendant breached the agreement "when it refused to put the terms of the Coca-Cola Pouring Rights contract into effect" and failed or refused "to implement the opportunities identified by plaintiff . . . ." That action, however, was permitted under the parties' agreement. A plain reading of the parties' agreement reveals that defendant had no obligation to accept any of the revenue opportunities presented to it by plaintiff, and whether to accept or reject any revenue opportunity was within the discretion of defendant alone. Alleging that defendant failed or refused to accept the Coca-Cola proposal or any other proposed revenue opportunity, therefore, does not articulate a claim for breach of the parties' agreement.

Plaintiff further alleged in the original complaint that defendant breached the agreement because it "failed to provide [plaintiff] with the information and support needed for the Coca-Cola Pouring Rights Agreement and hindered [plaintiff's] efforts to perform under the contract." Plaintiff's original complaint did not allege any facts to support this allegation, however. The express language of the parties' agreement provides in paragraph 5.01 that "[defendant] must furnish copies of all information, data, reports, records, etc., **that [defendant] and [plaintiff ] believe are necessary**. . ."(emphasis added). The plain language of the agreement thus provides that defendant is only obligated to provide the information that both parties agree is necessary. Further, plaintiff was able to negotiate and present the fully-negotiated Coca-Cola proposal to defendant for approval, demonstrating that it had the requisite information and support to do so. Because plaintiff did not allege any facts in its original complaint to establish that defendant breached any provision of the contract or that plaintiff had suffered any resultant damages, plaintiff's original complaint failed to state a claim for breach of contract, and the trial court properly granted defendant summary disposition of the original complaint pursuant to MCR 2.116(C)(8).

On appeal, however, plaintiff urges us to find that the original complaint should not have been dismissed because defendant breached the contract by breaching the implied covenant of good faith and fair dealing. The majority opinion agrees, and concludes that plaintiff's original complaint sets forth a claim for breach of contract both because it alleges that specific provisions of the parties' contract were breached and also because it sufficiently alleges a breach of contract based upon bad faith or unfair dealing. Again, I disagree.

-5-

Plaintiff's original complaint did not allege a breach of an implied covenant of good faith and fair dealing. A complaint must contain "[a] statement of facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend." MCR 2.111(B)(1). A mere statement of the pleader's conclusions, unsupported by allegations of fact, does not sufficiently state a cause of action. *Golec v Metal Exch Corp*, 208 Mich App 380, 382; 528 NW2d 756 (1995).

Moreover, Michigan does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing. *In re Leix Estate*, 289 Mich App 574, 591; 797 NW2d 673 (2010); see also *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 476; 666 NW2d 271 (2003) (explaining that because Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing, the trial court properly dismissed the claim). It is true that this Court has often noted that there exists in every contract an implied covenant of good faith and fair dealing, which is a promise ''that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Hammond v United of Oakland, Inc*, 193 Mich App 146, 152; 483 NW2d 652 (1992). This Court has stated that "[w]here a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith." *Burkhardt v City Nat'l Bank*, 57 Mich App 649, 652; 226 NW2d 678 (1975).

But under Michigan law, the implied covenant of good faith neither overrides nor replaces express contractual terms. *Bank of America, NA v Fidelity National Title Ins Co*, 316 Mich App 480, 501; 892 NW2d 467 (2016), citing *Van Arnem Co v Mfr Hanover Leasing Corp*, 776 F Supp 1220, 1223 (ED Mich, 1991). See also *Hubbard Chevrolet Co v General Motors Corp*, 873 F2d 873, 877 (CA 5, 1989) (Michigan law does not imply a covenant of good faith where the parties have "unmistakably expressed" their respective rights).[3] Nor will the implied covenant of good faith be used to fill alleged gaps in a contract where the contract is clear and specific regarding the parties' rights and obligations. See *Bank of America,* 316 Mich App at 501. So while an implied covenant of good faith has been recognized by this Court, the obligation of good faith cannot be used when interpreting a contract to override the express terms of the contract. *Cook v Little Caesar Enterprises, Inc*, 210 F3d 653, 657 (CA 6, 2000). That is, an implied covenant of good faith does not require a party to "ignore, forego, or waive its express contract rights." *VanArnem Co,* 776 F Supp at 1223. See also *Stephenson v Allstate Ins Co*, 328 F3d 822, 827 (CA 6, 2008) (holding that there is no implied duty of good faith where the parties have "unmistakably expressed their respective rights," because the implied duty cannot override express contract terms). Rather, where an action is permitted by a contract, there is no contract violation even if the action undertaken thwarts the reasonable expectations of the contracting party. *In re Leix Estate*, 289 Mich App at 591.

---

[3] The decisions of lower federal courts, though not binding upon state courts, may be persuasive. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

In this case, the parties' agreement unmistakably expressed the respective rights and duties of the parties. Accordingly, plaintiff cannot successfully argue that an implied duty of good faith overrides these plain terms. *Stephenson*, 328 F3d at 827; see also *Hubbard*, 873 F2d at 877-878 (holding that there was no implied duty of good faith and fair dealing when the parties' agreement gave one party the authority to approve or disapprove a term for its own reasons, thus setting limits on what the contract required of the parties). In sum, not only did the original complaint fail to allege breach of an implied duty of good faith and fair dealing, such an allegation would have been fruitless. I therefore must disagree with the conclusion of the majority opinion and would hold that trial court properly granted defendant summary disposition of the original complaint pursuant to MCR 2.116(C)(8).

## III. THE AMENDED COMPLAINT

In this case, the trial court permitted plaintiff to amend its complaint to allege with specificity its contention that defendant had breached the parties' agreement with regard to proposed revenue opportunities other than the Coca-Cola proposal. Plaintiff consequently filed its amended complaint, alleging breach of contract, promissory estoppel, and fraudulent misrepresentation. Specifically, plaintiff alleged in the amended complaint that pursuant to the agreement plaintiff had provided defendant with "numerous opportunities for new revenue sources" including, but not limited to, "the I-94 beautification project, the LED lighting project, the LED network project, the 511 Woodward LED project," as well as the Coca-Cola proposal that the trial court had earlier ruled upon. Plaintiff alleged that defendant had breached the initial agreement when it failed to provide plaintiff with "the information and support needed for various revenue opportunities" and that this failure was a bad faith refusal and/or failure by defendant to abide by the agreement causing defendant "huge revenues and savings cost opportunities" and "causing Plaintiff to incur unreimbursed time and unreimbursed expenses." The trial court granted defendant's motion regarding the claim of fraudulent misrepresentation pursuant to MCR 2.116(C)(7) and of the claims of breach of contract and promissory estoppel pursuant to MCR 2.116(C)(10).

On appeal, plaintiff contends that the trial court erred by granting defendant's motion for summary disposition of plaintiff's amended complaint pursuant to MCR 2.116(C)(10) with respect to plaintiff's claim of breach of contract. Plaintiff argues that based on the allegations of the amended complaint and supporting documentation there existed a genuine issue of material fact regarding whether defendant breached the parties' agreement by hindering plaintiff's ability to perform the contract. Specifically, plaintiff argues that defendant failed to provide needed information and assistance for proposed revenue opportunities and that certain of defendant's employees attempted to thwart plaintiff in its performance of the agreement. Plaintiff argues that these actions constituted breach of the parties' agreement and that it was damaged in the amount that it spent working on proposed revenue projects and in the amounts to which plaintiff would have been entitled had defendant approved the proposals.

The majority opinion agrees that there was a genuine issue of material fact and cites documentary evidence plaintiff presented to the trial court ostensibly demonstrating that defendant was uncooperative in assisting plaintiff in its efforts to perform the contract. The amended complaint and supporting documentation, however, fail to articulate the elements of

proximate cause or damages necessary to sustain a cause of action for breach of contract. I therefore disagree with the conclusion of the majority opinion.

A motion for summary disposition pursuant to MCR 2.116(C)(10) is to be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016). When reviewing an order granting summary disposition pursuant to MCR 2.116(C)(10) we consider all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*.

Again, the interpretation of a contract presents a question of law for this Court to determine de novo. *Bank of America,* 316 Mich App at 488. In interpreting a contract, this Court must give the words of the contract their ordinary and plain meanings. If the language of a contract is unambiguous, we must interpret and enforce the contract as written because an unambiguous contractual provision reflects the parties' intent as a matter of law. *Id*. at 489.

In this case, the amended complaint continues to fail to state a claim for breach of contract and, as the trial court held, also fails to present a disputed issue of fact that would avoid summary disposition pursuant to MCR 2.116(C)(10). Viewing all the documentary evidence in the light most favorable to plaintiff, the only allegation of the amended complaint that conceivably could constitute breach of the parties' agreement is the allegation that defendant failed to provide information to plaintiff as required by paragraph 5.01 of the agreement. But even if we accept this allegation as true, plaintiff has failed to show how this alleged action by defendant was the proximate cause of the damages plaintiff now seeks.

Under the terms of the agreement, breach by either party entitles the non-breaching party to terminate the agreement; breach does not entitle the non-breaching party to the amounts that party might have earned had a proposed revenue opportunity been accepted, and thereafter produced revenue. Again, we are constrained to give contract language its plain and ordinary meaning. The contract language states unequivocally that the only payment to which plaintiff can ever be entitled under the agreement is 25% of revenue realized by defendant, if defendant accepts a revenue proposal presented by plaintiff and if that accepted proposal generates revenue. The agreement explicitly states in paragraph 8.01 that the 25% of revenue for such an accepted contract is the "full compensation" to which plaintiff is entitled and, in paragraph 8.02, that ". . . [Plaintiff] is not entitled to any costs incurred in carrying out the Work." Thus, even if we accept for purposes of the motion that there is a question of fact regarding whether defendant failed to provide plaintiff information as required by the agreement, plaintiff has nonetheless failed to establish that this alleged breach resulted in plaintiff's alleged damages.[4] The trial court

---

[4] There is an additional reason it cannot be said that any failure on the part of defendant to cooperate with plaintiff in the development of revenue opportunities was the proximate cause of any damages plaintiff may have suffered. Under the terms of the contract, any revenue opportunities plaintiff might have presented to defendant would have to be approved both by the County Executive and County Commission before taking effect. It is pure speculation to conclude, for example, that the Coca-Cola pouring rights agreement, or any other revenue

therefore also appropriately granted summary disposition of plaintiff's amended complaint. I would therefore affirm.

/s/ Michael F. Gadola

---

opportunity, would have received the necessary approvals from these political actors. For this reason, any lack of cooperation plaintiff may have demonstrated in developing revenue opportunities was far too attenuated from its alleged damages to support the element of proximate cause. The same logic applies to the element of damages, as plaintiff could have had no meaningful expectation that it would profit under the terms of this contract given its dependence upon the approval of two separate branches of county government for any revenue opportunities to take effect. Plaintiff's damages are wholly speculative under these facts.